Filed 11/6/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re SHANNON M., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> F.S., <br><br>     Defendant; <br><br> SHANNON M., <br><br>     Objector and Appellant. | A136730 <br><br> (Alameda County <br> Super. Ct. No. OJ06002923) |

Many children who become dependents of our juvenile courts remain so when they are, at least chronologically, no longer children. The juvenile court has discretion to retain jurisdiction over a dependent until he or she attains the age of 21 years (Welf. & Inst. Code, section 303, subd. (a)),[1] but until recently the utility of doing so was limited by insufficient funds to assist nonminor dependents. This situation changed dramatically on January 1, 2012, when provisions of the California Fostering Connections to Success Act (CFCS Act or Act) (Assem. Bill No. 12 (2009–2010 Reg. Sess.); Assem. Bill No. 212 (2011–2012 Reg. Sess.)) became operative, allowing California to take advantage of newly-available federal funding for extended foster care benefits for certain nonminor dependents who were under an order of foster care placement when they turned 18

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

(§ 11400 et seq.; see 42 U.S.C. § 675(8)). The question presented here is, under this new statutory scheme, what rules, standards and procedures apply when a juvenile court is asked to terminate jurisdiction over a nonminor dependent who was *not* under an order of foster care placement at the time she turned 18.[2]

Appellant Shannon M., after years of foster care, was returned to her mother's home not long before her 18th birthday and abandoned by her mother shortly after she turned 18. The Alameda County Social Services Agency (Agency) asked the court to terminate dependency jurisdiction pursuant to section 364, subdivision (c), which generally governs continued supervision of dependents in home placements and *requires* termination of jurisdiction unless the court finds that grounds for assumption of jurisdiction exist or will likely exist absent court supervision. Shannon argued that section 391, as revised by the CFCS Act, governs the termination issue for *all* dependents who have turned 18—not, as argued by the Agency, only section 11400(v) nonminor dependents—and requires the court to consider the best interests of the nonminor dependent in deciding whether to terminate jurisdiction. The trial court terminated jurisdiction, articulating its order under the section 364 standard. We conclude that, except as otherwise specified in the statute, section 391 applies to all nonminor dependents, and we remand for the trial court to reconsider termination of dependency jurisdiction under the appropriate standard.

## I. DEPENDENCY HISTORY

Shannon first became a juvenile dependent in 2006, when she was 12 years old. She and her three siblings were detained after their mother (F.S., hereafter Mother) was arrested and incarcerated when a large quantity of drugs was found in her home. After Mother's failure to comply with her case plan and a failed relative placement, the

---

[2] For the purposes of this opinion, nonminor dependents are all persons who have reached the age of majority and over whom the juvenile court has dependency jurisdiction. As will be discussed *post,* the subset of nonminor dependents who are eligible, or potentially eligible, for extended foster care benefits as described in section 11400, subdivision (v) (section 11400(v)) are referred to as section 11400(v) nonminor dependents.

2

children were formally placed in foster care in August 2006.[3]  In July 2007, Mother's reunification services were terminated in Shannon's case.

Between August 2006 and May 2011, Shannon lived in a series of foster homes and briefly with her maternal grandmother.  She had a series of permanent plans of long-term foster care, initially with a goal of return home and later with goals of adoption or guardianship.  On several occasions, Shannon's foster parents or grandmother requested her removal due to behavioral issues or Shannon ran away from her placements.  All plans for adoption and guardianship fell through.  Beginning in May 2009, Shannon's permanent plans anticipated emancipation and independent living.  A "transitional independent living plan" was prepared and repeatedly updated, and she was referred to independent living skill classes.  Shannon was diagnosed with depression and other mental disorders, and she took prescription psychotropic drugs and attended individual therapy.

Throughout this period, Mother continued to have problems with drug use and criminal violations, but she maintained contact with Shannon.  Their continuing relationship seemed to interfere with Shannon's ability to form bonds with other adults.  In July 2010, the court authorized visits with Mother and modified Shannon's permanent plan to include a goal of returning her to Mother's care.  A September report, however, stated that Mother had not cooperated with the Agency's attempts to investigate the background of her roommates, and later permanent plans anticipated Shannon's emancipation and independent living.

In May 2011, Shannon petitioned to change her permanent plan from foster care to reunification with Mother.  The petition stated:  "Mother has been clean and sober for at least 2 years, . . . has completed treatment[,] . . . has one of her younger daughters . . . in her care[,] . . . now has stable housing that can provide suitable space for Shannon, and wishes to provide full time care for Shannon. [¶] . . . [¶] . . . [Shannon] is spending a substantial amount of time with her mother and wishes to reunify with her mother."  The

---

[3] Shannon's father had abandoned the family and his whereabouts were unknown.

3

court authorized a 14-day trial home visit and referred Mother and Shannon for family therapy. In June, on the Agency's recommendation, the court returned Shannon to Mother's home with family maintenance services because the 14-day visit had gone well. Shannon's 18th birthday was in September.

In November 2011, the Agency filed a status review report that recommended dismissal of dependency jurisdiction over Shannon. The Agency reported that Shannon had been living in Mother's home since June 6. "[M]other has reported . . . that since the return of Shannon to the home, there have been several verbal arguments between her and Shannon wherein Shannon has chosen to leave home and take respite at her friend's home. . . . However, [Mother] reports that she is always willing to have Shannon in her home." The Agency noted that Mother "has provided Shannon with shelter and food" and opined, "There appears to be no detriment to dismissal at this time as the items on the petition are no longer true and Shannon has reached the age of majority." Shannon objected to the recommendation of dismissal and the court set a contested hearing for January 5, 2012.

In December 2011, the Agency asked the court to issue a protective custody warrant for Shannon because Mother had been "arrested and later released on or about 11/05/11 and is believed to be fleeing from the law. [¶] . . . The residence of [Mother] is vacated and her whereabouts . . . are unknown. [¶] . . . [Shannon] was residing with her maternal great aunt, [T.S.], who as of 12/10/11 kicked her out of the home . . . [T]he aunt has stated that Shannon is probably with some friends. The aunt does not know the whereabouts of the minor's friend." The court issued the warrant. Shannon appeared in court on January 5, 2012 and the warrant was withdrawn.

At the January 5, 2012 hearing, Shannon's counsel reported that Shannon had none of the required documents that normally must be obtained before jurisdiction is terminated. The Agency agreed to provide the former section 391 (see Stats. 2010, ch. 559, § 27) documents and the court set a hearing for January 26 to review the

4

Agency's progress doing so.[4] At hearings held on January 26, February 23, and April 5 and in a June report, the court received updates on the collection of those documents, Shannon's application for MediCal benefits, high school graduation, referrals to transitional housing and other independent living services, and arrangements to remove Shannon's braces.[5]

On June 28, 2012, Shannon filed a written objection to the dismissal of jurisdiction and petitioned the court to maintain jurisdiction. Citing *In re Robert L.* (1998) 68 Cal.App.4th 789, 794 (*Robert L.*), *In re Holly H.* (2002) 104 Cal.App.4th 1324, 1330 (*Holly H.*), and *In re Tamika C.* (2005) 131 Cal.App.4th 1153, 1160 (*Tamika C.*), she argued that the court could terminate her dependency jurisdiction only if the Agency established that termination was in her best interest. Shannon argued termination of jurisdiction was not in her best interest because she was "in immediate need of support services from the [A]gency including mental health services, transportation assistance, and housing." Shannon stated she was destitute and had been essentially homeless since before she turned 18. At an August 1 hearing, she argued her situation was not typical of dependents under a family maintenance plan subject to review under section 364: "Shannon has had to do so many things on her own that she wouldn't have [had] to do if she was actually in a functioning Family Maintenance situation . . . . [T]he statutes that are designed to help minors transition into adulthood are the statutes that the Court should use in determining whether it is appropriate to dismiss her case. [¶] The best interest of the child is always at play in these cases . . . ."

The Agency argued that section 364 applied and there was no legal justification for continued jurisdiction over Shannon under that statute: "[C]onditions do not exist

[4] At the January 5, 2012 hearing, Shannon's counsel said, "We are not contesting the dismissal once those documents that are required are provided." The Agency, however, did not argue in the trial court and does not argue on appeal that Shannon thereby waived her argument that jurisdiction should have been continued even after the documents were provided.

[5] On January 30, 2012, Mother was once again arrested. She was reinstated on probation in February. As of June 2012, her whereabouts were again unknown.

5

which would justify initial assumption of jurisdiction . . . , and are not likely to exist if supervision is withdrawn.  This is the standard used to dismiss juvenile court jurisdiction under a Family Maintenance Order, and thus the standard that should be relied upon by this Court."  The Agency argued that section 391 did not apply because Shannon was not under a foster care placement order when she turned 18 and thus was not eligible to become a nonminor dependent under section 11400 et seq.  At the August 1, 2012 hearing, the Agency further argued, "The dependency statutes were not enacted to make sure that every child receive all of the benefits that some children receive . . . . [¶] . . . [¶] . . . I get that [Shannon] is having trouble with transportation and places to stay and . . . in her foreseeable future she won't have the therapist that she has had a relationship with.  All of that does not mean, though, this Court is to maintain its jurisdiction."

The court ruled:  "For all of the reasons set forth in the [Agency's] trial brief . . . and all of the arguments by [the Agency], which the Court agrees with, [that] . . . '[c]onditions do not exist which would justify initial assumption of jurisdiction under section 300 and are not likely to exist if supervision is withdrawn."  The court terminated dependency jurisdiction over Shannon.

## II.  DISCUSSION

### A.  *Legal Standards Governing Termination of Dependency Jurisdiction*

The primary issue on appeal is which legal standard governed the juvenile court's decision to terminate or continue jurisdiction over Shannon at the August 2012 hearing, when she was formally under an order placing her in Mother's care and had already turned 18.  We review this legal question de novo.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800.)  While a termination decision is usually reviewed for abuse of discretion (*Robert L., supra,* 68 Cal.App.4th at p. 794), a court abuses its discretion when it applies incorrect legal standards (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634).

Shannon argues the court erred in applying the section 364 legal standard.  We agree.

6

1. *Invited Error*

As a preliminary matter, we reject the Agency's argument that the trial court's reliance on section 364 was invited error. "[T]he doctrine of invited error applies where a party, for tactical reasons, persuades the trial court to follow a particular procedure. The party is estopped from claiming that the procedure was unlawful. [Citations.]" (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 772.)

The Agency draws our attention to a form "Joint Contested Hearing Statement" that the parties filed in November 2011, nine months before the hearing under review. In the statement, the parties identified the contested hearing as a section 364 hearing and identified the disputed factual issues as "conditions that gave rise to jurisdiction still exist; continued supervision is necessary," which paraphrases the section 364 standard. In June 2012, however, when Shannon formally objected to dismissal of jurisdiction and petitioned the court to maintain jurisdiction, she cited section 391 and *Robert L., supra,* 68 Cal.App.4th 789, and she argued the best interest of the child standard governed the court's decision whether to terminate jurisdiction. The Agency argued in response that the legal standard was set by section 364 and that section 391 and the *Robert L.* rationale did not apply, but the Agency did not argue that Shannon was estopped from disputing application of the section 364 standard because of the Joint Contested Hearing Statement. Again at the August 2012 hearing, Shannon's counsel argued the controlling legal standard was section 391 and the best interest of the child, and the Agency argued the controlling standard was section 364, without arguing estoppel. At the conclusion of the hearing, the court resolved the parties' legal dispute in favor of applying the section 364 standard and expressly adopted the arguments made by the Agency in its briefing and at the hearing.

In sum, while Shannon was dilatory in raising her argument that dependency jurisdiction could be continued in her case under section 391, nothing in the record indicates that she withheld the argument for a tactical reason, and the Agency never urged estoppel in the trial court. Moreover, there is no evidence of prejudice due to Shannon's delay: by the time of the August 2012 hearing, the Agency and the court were

7

well aware that the governing legal standard was a disputed legal issue and that Shannon contended section 364 did not control. The Agency had ample opportunity to dispute Shannon's legal position, and the court expressly resolved the legal dispute in the Agency's favor. There was no invited error.

2.    *Termination of Jurisdiction Unrelated to Dependent's Minor Status*

Turning now to the primary legal issue in this case, we review the distinct legal standards that govern (a) termination of jurisdiction for reasons independent of the minority status of a dependent child and (b) termination of jurisdiction because the dependent has reached the age of majority.

Before the juvenile dependency statutes were substantially revised in 1982 and again in 1987 (see *In re Marilyn H.* (1993) 5 Cal.4th 295, 301–304), dependency jurisdiction did not terminate before age 21 unless a party established that supervision was no longer needed. "[T]he juvenile court having properly asserted its jurisdiction the minor became subject thereto; and the court's jurisdiction continues until he reaches 21 years of age or until the juvenile court becomes convinced on the evidence that the protection of the minor no longer requires supervision (*Slevats v. Feustal* [(1963)] 213 Cal.App.2d 113, 117) at which time it is the duty of the juvenile court to dismiss the proceedings. (*In re Syson* [(1960)] 184 Cal.App.2d 111, 117.) . . . [T]he burden was on the person seeking a termination of the court's jurisdiction 'to show cause, if [he has] cause, why the jurisdiction of the court over the minor should be terminated.' ([Former] § 729 . . . ; *In re Robinson* [(1970)] 8 Cal.App.3d 783, 786.)" (*In re Francecisco* (1971) 16 Cal.App.3d 310, 314.)

Under the dependency scheme enacted in the 1980's, the standard for terminating dependency jurisdiction varies depending on the stage of the proceeding. In the early stages of a case, when services are being provided to the dependent child's parents, there is a statutory presumption in favor of terminating jurisdiction and returning the children to the parents' care without court supervision. Under section 364, for example, when dependents are in the offending parent's (or parents') care (either because they were never removed or because they were removed and returned home), the court "*shall*

terminate its jurisdiction *unless* the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervisions is withdrawn." (§ 364, subd. (c),[6] italics added; see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 313–315 [§ 364 applies where dependent returned home after an out-of-home placement]; *In re N.S.* (2002) 97 Cal.App.4th 167, 171–172 [same]; *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650 [same].) Similarly, under section 366.21, when dependents have been removed from their parents' care but the parents are receiving reunification services, "the court *shall* order the return of the child to the physical custody of his or her parent or legal guardian [at the status review hearing] *unless* the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment." (§ 366.21, subds. (e), (f), italics added; see *In re Marilyn H., supra,* 5 Cal.4th at p. 308 ["at each review hearing prior to permanency planning, there is a statutory presumption that the child will be returned to parental custody"].) If the dependent is returned to the parent's care under section 366.21, section 364 governs at the next review hearing and, as noted *ante,* jurisdiction must be terminated unless the court makes the required finding.

After the parents' services are terminated (or if services have been denied), the case proceeds to permanency planning and the termination standards change. (See *In re Marilyn H., supra,* 5 Cal.4th at p. 309 ["[o]nce reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability"].) At permanency planning, three general options are available to the court: (1) termination of

---

[6] Under section 361.2, when dependents are placed with a formerly noncustodial parent, jurisdiction may be terminated if the court determines there is no need for continuing supervision. (§§ 361.2, subd. (b), 366.21, subd. (e); see *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1495–1496, disapproved on other grounds by *In re Chantal S.* (1996) 13 Cal.4th 196, 204; *In re Janee W.* (2006) 140 Cal.App.4th 1444, 1450–1451.) It is unclear who bears the burden of proof on the issue.

parental rights and placement for adoption; (2) appointment of a relative or nonrelative as legal guardian for the dependent; and (3) placement in long-term foster care. (§ 366.26, subd. (b).) If adoption is chosen, the court terminates its dependency jurisdiction once the adoption is completed. (§ 366.3, subd. (a).) If guardianship is chosen, the court must retain jurisdiction until the guardianship is established and may retain dependency jurisdiction during the guardianship (with some restrictions on the court's discretion in the case of relative guardianships). (*Ibid.*) If long-term foster care is chosen, the court's dependency jurisdiction continues. (§§ 366.26, subd. (b)(6), 366.3, subd. (d).)

3.      *Termination of Jurisdiction Related to Dependent's Minor Status*

a.      *Section 303*

Dependency jurisdiction does not automatically terminate at age 18 (see *In re D.R.* (2007) 155 Cal.App.4th 480, 487), and the decision to retain or terminate jurisdiction generally remains within the sound discretion of the juvenile court (*Holly H., supra,* 104 Cal.App.4th at p. 1333). Since 1976, the juvenile dependency scheme has specifically provided that "[t]he court may retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile court until the ward or dependent child attains the age of 21 years." (§ 303, subd. (a); see former § 301, added by Stats. 1976, ch. 1068, § 6, p. 4759; Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2013) § 2.180[5][a] at p. 2-562 (Seiser & Kumli) ["dependency jurisdiction ceases by operation of law when the dependent reaches the age of 21"].) Before the dependency scheme was overhauled in the 1980's, case law indicated that the standard for terminating dependency jurisdiction did not vary based on the dependent's age (up to age 21): jurisdiction continued unless a party proved there was no continuing need for supervision. (See *In re Francecisco, supra,* 16 Cal.App.3d at p. 314.)

Under the dependency scheme as enacted in the 1980's and before the enactment of former section 391 in 2000, there was little statutory guidance on how a court should exercise its discretion under section 303, and we can identify only one published decision that addressed the issue, *Robert L., supra,* 68 Cal.App.4th 789. (See *Holly H., supra,* 104 Cal.App.4th at p. 1332 [citing *Robert L.* as only published decision on subject].)

10

Dependents Robert and Michelle were placed with their grandparents in long-term foster care so that the grandparents could receive monthly foster care benefits allowing them to care for the children. At a review hearing after both Robert and Michelle were past the age of majority and attending college, a social worker recommended termination of dependency jurisdiction in light of their success. The trial court instead continued jurisdiction over Robert and Michelle to help defray educational and living expenses and ensure continued medical coverage. (*Robert L.*, at pp. 791–793.) The trial court found that "continued jurisdiction is necessary because *conditions exist which justify jurisdiction under [sections] 300 [and] 364[, subdivision ](c)*." (*Id.* at p. 793.) Observing first that section 364 had no application in the context of a foster home placement and that the court does not review the original basis for exercise of jurisdiction (under § 300) in that setting, the Court of Appeal held that, absent any evidence of current or future threatened harm to the dependent, the juvenile court abused its discretion in extending jurisdiction. (*Id.* at pp. 793–794, 797.) Applying section 303, the court held that "[t]his section declares what case law had previously determined: that exercise of jurisdiction must be based upon existing and reasonably foreseeable future harm to the welfare of the child. [Citation.] Similar factors should come into play in determining whether jurisdiction should extend beyond the age of majority." (*Robert L.,* at p. 794.) Courts at the time, however, rarely continued jurisdiction past age 18 due in part to the termination of federal funding for foster youth at age 18. (See *Holly H., supra,* 104 Cal.App.4th at p. 1330; *Tamika C., supra,* 131 Cal.App.4th at p. 1164 & fn. 5; *In re K.L.* (2012) 210 Cal.App.4th 632, 637.)

b.     *Former Section 391*

In 2000, the Legislature enacted former section 391, which established procedural prerequisites to the termination of dependency jurisdiction at or after age 18. (Former § 391, as enacted by Stats. 2000, ch. 911, § 3.) The statute required agencies to provide dependents turning 18 identification, a social security card, and other documents, and to help the dependents obtain health insurance, housing and admission to postsecondary schools or training programs. (Former § 391, subd. (b).) The statute expressly allowed

11

the court to continue jurisdiction if these procedural requirements had not been fulfilled as well as "for other reasons." (Former § 391, subd. (c); see *Holly H., supra,* 104 Cal.App.4th at pp. 1330–1331.) In *Holly H.*, another division of this court held that the *Robert L.* standard continued to govern the court's discretion to continue jurisdiction for those other reasons. (*Holly H.*, at pp. 1332–1333.) Two other cases have followed *Holly H.*, holding dependency jurisdiction over a dependent who turns 18 should continue unless it was proved that the dependent would face no existing or foreseeable risk of harm absent the supervision of the court (i.e., termination would be in the best interest of the dependent). (See *Tamika C., supra,* 131 Cal.App.4th at pp. 1160, 1164, 1168; *In re D.R., supra,* 155 Cal.App.4th at pp. 486–488 [addressing motion to reinstate dependency jurisdiction under §§ 366.3, subd. (b), 366.4 for child in legal guardianship].) Although the dependents in each of these cases were either in foster care or under a guardianship at the time they turned 18, nothing in the language or reasoning of these cases suggests that, as the Agency argues, the standard adopted in the cases applied *only* to dependents in such placements. In our view, the case law establishes that under former section 391 the standard for terminating dependency jurisdiction at age 18 was whether termination was in the best interest of the dependent, i.e., whether there was an existing or foreseeable risk of harm to the dependent if jurisdiction were terminated.

        c.     *The CFCS Act*

As noted *ante,* the CFCS Act amended section 11400 et seq. to take advantage of newly available federal benefits for certain dependent children who are under an order of foster care placement when they turn 18. (See *K.L., supra,* 210 Cal.App.4th at pp. 634, 637; § 11403, subd. (a).) For purposes of the section 11400 et seq. statutory scheme, section 11400(v) defines a "nonminor dependent" (as relevant here and referred to as a section 11400(v) nonminor dependent) as "a foster child . . . who is a current dependent child . . . [and] who satisfies all of the following criteria: [¶] (1) He or she has *attained 18 years of age while under an order of foster care placement* by the juvenile court, and is not more than 19 years of age on or after January 1, 2012 . . . . [¶] (2) He or she is in foster care . . . . [¶] (3) He or she is participating in a transitional independent living case

12

plan . . . as described in Section 11403." (Italics added.) Section 11403 in turn specifies that the nonminor dependent must be employed or participating in an educational or training program or have a medical condition that prevents him or her from doing so. (§ 11403, subd. (b)(1)–(5); hereafter § 11403(b)(1)–(5).)

The Act also revised or added several statutes that govern termination or continuation of dependency jurisdiction at age 18 and post-permanency planning hearings for dependents for whom jurisdiction is continued past age 18. (See, e.g., Stats. 2010, ch. 559, §§ 8, 15–28, 61–62.3, 64–64.5 & Stats. 2011, ch. 459, §§ 7–11.5, 41, 43 [Welf. & Inst. Code, §§ 303, 366, 366.21, 366.22, 366.25, 366.3, 366.31, 366.4, 388, 391, 16501, 16501.1, 16503, 16504.5].) The parties dispute the effect of these statutory changes on the trial court's power or discretion to continue or terminate dependency jurisdiction over dependents who do not potentially qualify as section 11400(v) nonminor dependents.[7] Shannon argues that revised section 391 applies to all nonminor dependents. We agree.

(1) *Changes to Section 303*

Although the Act amended section 303, that statute still provides that "[t]he court *may* retain jurisdiction over *any person* who is found to be a ward or a dependent child of

_____

[7] Shannon argues that, where they conflict, sections 303, 390, and 391 prevail over section 364 under the rule that specific statutory provisions control over general provisions. The Agency argues the opposite, that section 364 prevails over the others. (See *Arbuckle-College City Fire Protection Dist. v. County of Colusa* (2003) 105 Cal.App.4th 1155, 1166.) We disagree with both parties' characterization of sections 303, 364, 390 and 391 as general or specific statutes covering the same subject matter. Instead, we read sections 303 and 391 as governing a court's consideration of whether to terminate jurisdiction on the ground that a dependent has reached the age of majority, section 364 as governing a court's consideration of whether to terminate jurisdiction on the ground that a dependent in his or her parent's care is no longer at risk of harm if left in the parent's care without court supervision, and section 390 as governing a court's dismissal of a dependency *petition*, not dependency jurisdiction. (See *In re Natasha H.* (1996) 46 Cal.App.4th 1151, 1156 [§ 390 not relevant to dismissal of jurisdiction].) Because the statutes address distinct situations that are not necessarily mutually exclusive, the rule that a specific statutes prevails over a general statute does not apply.

13

the juvenile court until the ward or dependent child attains the age of 21 years." (§ 303, subd. (a), italics added.) Section 303, subdivision (b) now further provides that "[o]n and after January 1, 2012, the court *shall* have within its jurisdiction any nonminor dependent, as defined in [section 11400(v)]," either general or dependency jurisdiction. (Italics added.) Section 303, subdivision (b), therefore, is limited to section 11400(v) nonminor dependents, whereas subdivision (a) of section 303 is not.

Section 303, subdivision (c) provides that a nonminor who exited foster care at or after age 18 may, until age 21, petition the court to resume dependency jurisdiction over him or her pursuant to section 388, subdivision (e) (hereafter section 388(e)), and the latter statute provides that "a nonminor who attained 18 years of age while subject to an order for foster care placement" and whose dependency jurisdiction was terminated pursuant to section 391 may, until age 21, petition for reinstatement of dependency jurisdiction. To qualify for such reinstatement, the nonminor must demonstrate he or she intends to satisfy the requirements of section 11403(b)(1)–(5). (§ 388, subd. (e)(2)(ii), (5)(A)(iv).) That is, the nonminor must demonstrate he or she is potentially eligible for section 11400(v) nonminor dependent status. Thus, section 303, subdivision (c) applies to potential section 11400(v) nonminor dependents.[8]

In sum, revised section 303, subdivision (a) *allows* the court to continue its jurisdiction over *any nonminor dependent* until age 21; section 303, subdivision (b) *requires* the court to maintain at least general jurisdiction over a *section 11400(v) nonminor dependent* until age 21; and section 303, subdivision (c) and section 388(e)

---

[8] Section 303, subdivision (d) provides, as relevant here, that "a person who has attained 18 years of age" retains his or her rights as an adult regardless of whether he or she remains under dependency jurisdiction (§ 303, subd. (d)(1)), and subdivision (e) provides that the county welfare agency nevertheless retains the obligations toward the nonminor dependent that it would have if he or she was a minor dependent. Although section 303, subdivision (d)(1) refers to provisions of section 11400 that apply only to section 11400(v) nonminor dependents, we do not understand the entire subdivision to apply only to section 11400(v) nonminor dependents. However, this is not an issue we need to decide in this case.

14

allow *potential section 11400(v) nonminor dependents* to petition for *resumption* of dependency jurisdiction until age 21.

(2)     *Changes to Section 391*

Section 391 establishes requirements for termination hearings.[9] The statute variously includes references to a "nonminor," "dependent nonminor," "nonminor dependent, as defined in [section 11403(b)(1)–(5)]," and "nonminor dependent as described in [section 11400(v)]." The Agency argues that the overall statutory scheme indicates that all "nonminor" and "dependent nonminor" references in section 391 are implicitly if not explicitly limited to section 11400(v) nonminor dependents. In opposition, Shannon invokes the canon of statutory interpretation that "[w]here different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning. [Citation.]" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) Again, we agree with Shannon.

Section 391 as revised by the CFCS Act has six relevant subdivisions, each of which is applicable to a specified class of nonminor dependents. Section 391, subdivision (a) applies to "a nonminor" without qualification and provides that a "dependency court" may not terminate jurisdiction unless a hearing is conducted pursuant to the section. Subdivision (a) would therefore at least facially apply to all nonminor dependents, whether or not in foster care.

---

[9] The Agency places great emphasis on the fact that former section 391 was entirely repealed and a new section 391 was added as part of the CFCS Act. (See Stats. 2010, ch. 559, §§ 27–28.) In our view, however, the changes to the statute do not differ significantly from ordinary statutory amendments:  subdivisions (b)(1) and (e) of current section 391 are very similar, respectively, to subdivisions (a) and (b) of the former statute; and current section 391, subdivision (d) incorporates part of subdivision (c) of the former statute. (Compare § 391 with Stats. 2000, ch. 911, § 3, pp. 6739–6740.)

Only nonsubstantive amendments have been made to this statute since August 2012, when Shannon's dependency jurisdiction was terminated. (See Stats. 2012, ch. 162, § 190.)

Section 391, subdivision (b) again applies to "a nonminor" without qualification and provides that at "any hearing" to determine whether to terminate jurisdiction, the court must follow certain procedures. Again, dependents subject to this subdivision necessarily are nonminor dependents. The further subparagraphs within subdivision (b) repeatedly refer to "the dependent nonminor" or "the nonminor," referencing the "nonminor" who is the subject of the termination hearing, i.e., any nonminor who is subject to a termination hearing.

The Agency argues that certain provisions in section 391, subdivisions (b)(2) and (b)(3), necessarily imply that subdivision (b) applies only to section 11400(v) nonminor dependents. We disagree. Section 391, subdivision (b)(2) requires child welfare departments to submit a report on whether continuing dependency jurisdiction is in the nonminor's best interest and, if it recommends continued jurisdiction, to include in the report a "transitional independent living case plan for the nonminor." The Agency notes that section 11400 defines "transitional independent living case plan" as a plan that is applicable only to section 11400(v) nonminor dependents. (§ 11400, subd. (y); hereafter § 11400(y).) However, we reject the Agency's argument that the entire subdivision must, therefore, apply only to section 11400(v) nonminor dependents. First, section 11400's definitions do not apply to the entire CFCS Act, as Agency incorrectly contends. They apply only to the article that contains section 11400, which does not include section 391. (§ 11400 ["For the purposes of this article, the following definitions shall apply . . ."]; see §§ 11400–11410 [statutes comprising art. 5 of Welf. & Inst. Code, div. 9, part 3, ch. 2].) Second, even if we were to assume that the section 11400(y) definition controlled the meaning of "transitional independent living case plan" in section 391, we would agree with Shannon that the statutory scheme is better harmonized by construing this language to mean that the report must include the case plan *if applicable*. (See *In re A.F.* (2013) 219 Cal.App.4th 51, 57–58 [construing CFCS Act to permit appointment of successor guardian when guardian for nonminor dependent dies after dependent turned 18 to avoid conflict with statutory purpose].) Otherwise, there would be no distinction between the "nonminor" referenced in section 391, subdivision (b) and the "nonminor who meets the

16

definition of a nonminor dependent as described in [section 11400(v)]" in section 391, subdivision (c), contrary to the canon of statutory interpretation that different terms in the same statute are presumed to have different meanings.[10]

Section 391, subdivision (b)(3) requires an agency that is recommending termination of jurisdiction to assist the nonminor in meeting or maintaining eligibility for section 11400(v) nonminor dependent status, specifically by meeting the requirements of section 11403(b)(1)–(5). The Agency argues that this provision necessarily implies that section 391, subdivision (b) applies only to section 11400(v) nonminor dependents. Particularly in light of the fact that section 391, subdivision (a) does not limit the "nonminor[s]" entitled to a termination hearing, we conclude a more natural reading of the statute is that, for *every* dependent facing possible termination of jurisdiction at age 18, the child welfare department must prepare a report on the termination issue and include information relevant to *whether* the dependent can establish eligibility for extended foster care payments under section 11400 et seq.[11]

In sum, despite references to the section 11400 et seq. statutory scheme, we conclude that section 391, subdivision (b), by its plain language, applies to any nonminor dependent facing a termination hearing.

Section 391, subdivision (c) expressly applies to "a nonminor who meets the definition of a nonminor dependent as described in [section 11400(v)]" and requires the court to continue jurisdiction unless it makes certain findings. (§ 391, subd. (c)(1).) The

---

[10] We further observe that transitional independent living plans were in use before adoption of the CFCS Act, as exemplified by Shannon's case history. Therefore, we could alternatively harmonize the statutory scheme by construing section 391, subdivision (b)(2) to require a section 11400(y) transitional independent living case plan for a potential section 11400(v) nonminor dependent and a transitional independent living plan (or a modified transitional independent living case plan) for other nonminor dependents.

[11] Similarly, section 391, subdivision (b)(4) requires the agency to advise a nonminor who is seeking termination of dependency jurisdiction of his or her options, including the right to file a section 388(e) petition. As noted *ante*, only section 11400(v) nonminor dependents may file section 388(e) petitions. We read the subdivision to require advice about section 388(e) petitions *where applicable*.

plain language of this subdivision indicates it applies only to section 11400(v) nonminor dependents, and later references to "the nonminor" clearly referring back to the section 11400(v) nonminor dependent who is the subject of subdivision (c).

Section 391, subdivision (d) applies to "a nonminor" who "cannot be located" and allows the court to terminate dependency jurisdiction but requires it to maintain general jurisdiction until the nonminor reaches the age of 21. Again, the plain language of this subdivision indicates it applies only to a *subset* of nonminor dependents, those who cannot be located, and subsequent references to "the nonminor" in the subdivision refer back to a nonminor within this subset. The last sentence of section 391, subdivision (d)(2)—"A nonminor may petition the court pursuant to subdivision (e) of Section 388 to resume dependency jurisdiction at any time before attaining 21 years of age"—appears to refer to "a nonminor" without qualification, but as noted *ante* the provisions of section 388(e) apply only to nonminors who are potentially eligible for status as section 11400(v) nonminor dependents. The reference to section 388(e) in this subdivision of section 391 makes sense because nonminors who could not be located when they turned 18 are likely beneficiaries of section 388(e). We reject the Agency's argument that the reference to section 388(e) supports its position that section 391 applies exclusively to section 11400(v) nonminor dependents.

Section 391, subdivision (e) applies to "a nonminor dependent who has attained 18 years of age"—i.e., any nonminor dependent—and requires, before dependency jurisdiction is terminated, that the social services department provide certain documents and assistance to the minor (or, in the case of a nonminor dependent who cannot be located, verify that efforts were made to make the documents and assistance available to the nonminor). This subdivision incorporates the main procedural requirements of former section 391.[12] Repeated references to "the nonminor" in the further

_____

[12] Section 391, subdivision (e)(2)(I) requires that a section 388(e) petition form be included among the documents, and section 391, subdivision (e)(8) also references section 388(e). The Agency argues that these references support its position that section 391 applies exclusively to section 11400(v) nonminor dependents because only

18

subparagraphs of subdivision (e) are clear references to the nonminor dependent who is the subject of the subdivision, i.e., any nonminor dependent.[13]

Section 391, subdivision (f) requires the department to report its progress in completing the subdivision (e) requirements at the hearing closest to and before a "dependent minor's" 18th birthday and at every review hearing thereafter for "nonminors," without qualification. Because the "nonminors" at issue are subject to review hearings, they are necessarily nonminor dependents. We construe the latter part of this subdivision to apply all nonminor dependents without qualification.

---

potential section 11400(v) nonminor dependents may file section 388(e) petitions. We disagree. First, if the Agency's position were correct, there would be no current statute requiring agencies to provide the listed documents and assistance to the group of nonminors most likely to face termination of jurisdiction at age 18—i.e., those who are not eligible to be section 11400(v) nonminor dependents—even though they would have received these services before enactment of the CFCS Act pursuant to former section 319. The Agency cites no legislative history demonstrating that the Legislature intended to withdraw this safety net from dependents aging out of the system at 18. Second, if the Legislature intended to restrict section 391, subdivision (e) to section 11400(v) nonminor dependents, it could have said so expressly as it did in subdivision (c). We again conclude that the statutory scheme is best harmonized by construing section 391, subdivision (e)(2)(I) to require the agency to provide a section 388(e) petition form to those nonminor dependents who *potentially* could file such a petition in the future, or to all nonminor dependents for their *possible* use if they qualify as a section 388(e) petitioner.

[13] Section 391, subdivision (e)(8) is perplexing. Although it is part of a subdivision that applies to "a nonminor dependent who has attained 18 years of age" for whom dependency jurisdiction has not yet been terminated, it requires the agency to assist in petitioning for *resumption* of jurisdiction under section 388(e) and section 11400, subdivision (z). We need not resolve this anomaly here.

Section 391, subdivision (e)(9) refers to "the child." This appears to be a drafting error, as the plain language of section 391, subdivision (e) indicates that the subdivision applies to "a nonminor dependent who has attained 18 years of age" and subdivision (e)(9) requires the department to inform "the child" that a preference for student assistant or internship positions with state agencies is available to current or former dependent children who are or have been in foster care *up to age 26*. The subdivision was enacted separately from the bulk of the CFCS Act. (See Stats. 2011, ch. 464, § 2.5.)

In sum, the plain language of section 391 indicates that the statute applies to all nonminor dependents, with the exception of subdivisions (c) and (d), which are applicable to specific subsets of nonminor dependents.[14] For nonminor dependents who do not fall within one of those subsets, section 391 requires the court to hold a hearing before terminating dependency jurisdiction (§ 391, subds. (a), (b)); requires the department to verify that it provided the nonminor dependent with certain documents and assistance (§ 391, subds. (b)(3), (b)(4), (e), (f)), and requires the department to ensure the nonminor dependent's presence at the hearing if possible (§ 391, subd. (b)(1)) and report

---

[14] The Agency argues section 366.32 (similar to former section 366.31, which was enacted as part of the CFCS Act; see Stats. 2010, ch. 559, § 24 & Stats. 2011, ch. 459, § 8) demonstrates that the Legislature intended section 391 to apply only to section 11400(v) nonminor dependents. Section 366.32, subdivision (a) provides that a juvenile court may continue or terminate dependency jurisdiction over a section 11400(v) nonminor dependent pursuant to section 391. However, section 366.32, subdivision (a) does not state that section 391 applies *only* to section 11400(v) nonminor dependents. All of section 366.32 applies only to section 11400(v) nonminor dependents, so it is logical that subdivision (a) would address only that subset of nonminor dependents. We do not agree that this statute, by negative implication, establishes that section 391 applies only to section 11400(v) nonminor dependents despite the fact that the Legislature expressly provided that only certain subdivisions of section 391 apply to section 11400(v) nonminor dependents.

Subsequent to Shannon's August 2012 hearing, a new statute related to termination of dependency jurisdiction went into effect. (§ 366.31; see Stats. 2012, ch. 846, § 26, effective January 1, 2013.) Although we need not construe the statute here, we note that our review of the statute has not undermined our confidence in our interpretation of section 391. Briefly, section 366.31 governs (as relevant here) review hearings for nonminor dependents. Like the subdivisions of section 391, section 366.31's multiple subdivisions apply to various categories of nonminor dependents, not all of which are limited to section 11400(v) nonminor dependents. Section 366.31, subdivision (b) applies to "the nonminor dependent, as described in [section 11400(v)]," whereas section 366.31, subdivision (c) applies to "any nonminor dependent." Although section 366.31, subdivision (c) also refers to a section 11400(y) transitional independent living case plan, we construe this language, like the language in section 391, subdivision (b)(2), to apply to such a plan only *if applicable*. Otherwise, the Legislature's distinction between a "nonminor dependent, as described in [section 11400(v)]" and "any nonminor dependent" in subdivisions (b) and (c) of section 366.31 would be meaningless.

on "whether it is in the nonminor's best interests to remain under the court's dependency jurisdiction" (§ 391, subd. (b)(2)). This "best interest" standard suggests that the legal standard set forth in the *Robert L., supra,* 68 Cal.App.4th 789 line of cases continues to govern the determination whether to terminate dependency jurisdiction for nonminors who do not fall within section 11400(v).

Our interpretation is supported by court rules adopted by the Judicial Council to implement the CFCS Act. California Rules of Court, rule 5.555,[15] which became effective July 1, 2012, applies to termination hearings for "a nonminor dependent as defined in section 11400(v)" and a "dependent of the juvenile court who is 18 years of age or older and subject to an order for a foster care placement." (Rule 5.555(a)(1)(A), (B).) Notably, rule 5.555 indirectly recognizes that nonminor dependents who are not in foster care even when they turn 18 might be eligible for a continuation of dependency jurisdiction: "Nothing in the Welfare and Institutions Code or the California Rules of Court restricts the ability of the juvenile court to maintain dependency jurisdiction or delinquency jurisdiction over a person, 18 years of age or older, who does not meet the eligibility requirements for status as a nonminor dependent[16] and to proceed as to that person under the relevant sections of the Welfare and Institutions Code and California Rules of Court."[17] (Rule 5.555(a)(2).)

Our interpretation is also consistent with the description of the CFCS Act in a leading treatise on California juvenile law. (Seiser & Kumli*, supra,* § 2.180[5]-[12], pp. 2-562 to 2-574.) The 2013 edition of the treatise includes three sections on "Terminating Jurisdiction When Child Reaches Age of Majority": "Existing Law," "Extended Foster Care," and "Emancipation." (*Id.* at § 2.180[5], pp. 2-562 to 2-568.)

---

[15] All rule references are to the California Rules of Court.

[16] Reference to "the eligibility requirements for status as a nonminor dependent" is best understood as a reference to the eligibility requirements for status as a "nonminor dependent as defined in section 11400(v)" that is mentioned in rule 5.555(1)(A).

[17] Identical language appears in rule 5.900(a)(2), which also became effective January 1, 2012.

The "Extended Foster Care" section addresses continued jurisdiction for section 11400(v) nonminor dependents. (Seiser & Kumli, at § 2.180[5][b], pp. 2-564 to 2-568; see also *id.* at § 2.180[8], pp. 2-569 to 2-570.) The "Emancipation" section addresses emancipation petitions filed pursuant to Family Code, section 7120 et seq. and is not relevant here. (Seiser & Kumli, at § 2.180[5][c], p. 2-568.) The "Existing Law" section addresses continued jurisdiction for "children aging out of the system" who do "not qualify for or want to participate in programs for nonminor dependents." (Seiser & Kumli*, at § 2.180[5][a], p. 2-563.) In context, it is clear that the treatise's "Existing Law" discussion applies to dependents turning 18 who are not potential section 11400(v) nonminor dependents. For such dependents, the treatise explains, "The juvenile court may, in an appropriate case, maintain dependency over a child who has reached the age of majority, but not yet reached the age of 21 years [(§ 303)]. . . . If the child has reached the age of majority, the child should be present at any hearing to terminate dependency jurisdiction . . . . At the hearing the agency must submit a report verifying [section 391, subdivision (e)] information, documents, and services have been provided to the child . . . . [¶] . . . [¶] The burden of proof is with the agency when it is seeking to terminate dependency jurisdiction for a dependent child who has turned 18 years of age. . . . [I]t must show termination of dependency jurisdiction is in the child's best interest. [(*Tamika C., supra,* 131 Cal.App.4th at pp. 1160–1161.)]" (Seiser & Kumli*, at § 2.180[5][a], pp. 2-562 to 2-564.) Thus, the treatise recognizes that jurisdiction may be continued beyond age 18 for a dependent who is not an actual or potential section 11400(v) nonminor dependent, and that the *Robert L., supra,* 68 Cal.App.4th 789 best interest standard governs the termination decision in that context.

While the primary legislative focus of the CFCS Act was clearly on making continued services and benefits available to juvenile court dependents in foster care who would otherwise "age out" of the system, we find nothing in the statutory scheme that withdraws the court's preexisting power to extend dependency jurisdiction for nonminor dependents generally. Significantly, a lack of federal funding to support the cost of providing services beyond age 18 is not a proper basis for termination of dependency

jurisdiction.  (See *Tamika C., supra,* 131 Cal.App.4th at pp. 1164 & fn. 5, 1168 [holding court erred by terminating jurisdiction in the absence of unusual circumstances so as to spare the agency the cost of extended foster care without federal financial assistance]; § 10103.5 [effective June 27, 2012, extending benefits to nonminor dependents or former dependents who received aid during 2012 and turned 19 in 2012, even if "the county has provided aid using county-only funds"].)  We reject the Agency's argument that under section 391 the court has *no* discretion to extend dependency jurisdiction to such nonminor dependents.

B.     *Termination of Jurisdiction in Shannon's Case*

The Agency argues that, even if section 391 governed the decision whether to continue Shannon's dependency jurisdiction beyond age 18, the judgment should be affirmed because the trial court knew it had discretion to continue jurisdiction, exercised that discretion in terminating jurisdiction, and did not abuse its discretion in doing so.  The record is at best ambiguous on these points.  It is true that the evidence presented at the August 2012 hearing related primarily to Shannon's ability to obtain housing, health care, higher education, and financial assistance as a young adult (facts relevant to termination of jurisdiction under § 391) rather than to Mother's availability and ability to support Shannon at the time Shannon turned 18 or at the time of the hearing (facts relevant to termination of jurisdiction under § 364).  Moreover, the court's repeated continuances of the termination hearing, which effectively continued dependency jurisdiction over Shannon for several months, were based on matters relevant to section 391 termination of jurisdiction:  the need to provide Shannon with documentation and assistance in her transition to independent living.  (See § 391, subd. (e).)  On the other hand, the Agency argued in its brief and throughout the hearing that only section 364 was relevant, and the court articulated its decision under the section 364 standard. We cannot confidently conclude that the court understood and exercised its discretion under a section 391 standard that the Agency repeatedly urged the court to reject.

The Agency also argues that the termination of Shannon's jurisdiction was harmless (rendering a remand unnecessary) because Shannon was statutorily ineligible

23

for the specific services she primarily cited in support of her request for continued jurisdiction, i.e., therapy and case management services through a particular clinic. There was evidence that these services would be covered by MediCal only if she was a section 11400(v) nonminor dependent. Although Shannon appeared not to be eligible for federally supported extended foster care benefits (but see § 10103.5 [extending certain services for persons who turned 19 in 2012]), the absence of such eligibility is not an absolute bar to continuation of jurisdiction. (See *Tamika C., supra,* 131 Cal.App.4th at pp. 1164 & fn. 5, 1168 [error to terminate jurisdiction due to lack of federal funding].) In her reply brief, Shannon notes that she continued to receive such services after she had turned 18 and before the court terminated jurisdiction, and she suggests that other services may become available to her if jurisdiction were continued. On this record, we cannot conclude that the court's reliance on the wrong legal standard when it terminated jurisdiction over Shannon was harmless.

### III.   DISPOSITION

The order terminating jurisdiction over Shannon is reversed and the case is remanded for further proceedings consistent with the views expressed in this opinion.


_____
Bruiniers, J.


We concur:


_____
Simons, Acting P. J.


_____
Needham, J.


24

Superior Court of Alameda County, No. OJ06002923, Kimberly M. Briggs, Judge.

S. Lynne Klien, under appointment by the Court of Appeal, for Objector and Appellant.

Donna Ziegler, County Counsel, Grace Fongmei Tam, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendent F.S.