Filed 5/27/26  In re Violet S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re VIOLET S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E087240 |
|  | (Super.Ct.No. J299160) |
| Plaintiff and Respondent, | OPINION |
| v. | |
| VIOLET S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Reversed with directions.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Respondent.

Laura Feingold, County Counsel and Landon Villavaso, Deputy County Counsel for Plaintiff and Respondent.

The juvenile court terminated jurisdiction over Violet S., a nonminor dependent, and she challenges that order on appeal. We reverse and remand for the juvenile court to reinstate jurisdiction.

BACKGROUND

One month after Violet's 18th birthday, the juvenile court extended jurisdiction over Violet as a nonminor dependent in extended foster care. Violet had not had contact with any family members for several years.

Violet has cerebral palsy and is nonambulatory, nonverbal, hearing impaired, and significantly delayed. She requires 24-hour medical care and will require lifelong subacute care. She is placed at the subacute care facility of Totally Kids Rehabilitation Hospital (Totally Kids), where she has resided since she was 13 months old. Violet will remain at Totally Kids until she is 21 years old. She then will be transitioned to an adult subacute care facility.

San Bernardino County Children and Family Services (CFS) filed three six-month status review reports about Violet's status, care, progress, and placement as a nonminor dependent: in April and October 2024 and April 2025. Each of those reports was accompanied by a transitional independent living case plan (TILCP), which included a transitional independent living plan (TILP) to be effective for the following six-month period.[1] Violet did not have the mental capacity to consent to the plan. Each TILP

_____

[1] The TILCP is a "nonminor dependent's case plan, updated every six months, that describes the goals and objectives of how the nonminor will make progress in the transition to living independently and assume incremental responsibility for adult decisionmaking, the collaborative efforts between the nonminor and the social worker, …

2

described the same three goals for Violet: (1) attending school one hour per weekday onsite at Totally Kids through the L.I.F.E. program of the local school district, (2) continuing to receive appropriate medical care, and (3) attending daily activities at Totally Kids. In each of the status review reports, CFS reported that Violet was making satisfactory progress toward achieving the goals in her TILP.

For each reporting period, CFS stated that it had provided Violet with the following services: "case management, case planning, phone calls, face-to-face monthly contacts, crisis intervention, and placement management." Her TILCP required a social worker from CFS to meet with her "a minimum of one time per month to ensure all needs are being met and overall well-being." All three status review reports were accompanied by a certification from CFS that Violet continued to qualify for extended foster care as a nonminor dependent.

In both reports filed in 2024, CFS reported that Violet's permanent plan was to transition to independence with permanent connection with caring adults, and CFS recommended that it was in Violet's best interest to remain in extended foster care as a nonminor dependent. In April 2024, CFS reported that an application for supplemental security income for Violet was being processed. CFS recommended that it was in her best interest to remain under the juvenile court's jurisdiction pending approval of the

and the supportive services as described in" the TILP. (Welf. & Inst. Code, § 11400, subd. (y); unlabeled statutory references are to this code.) The TILCP "shall include" the TILP "[w]hen appropriate." (§ 16501.1, subd. (g)(16)(A)(ii).) The TILP is "a written description of the programs and services that will help the nonminor dependent, consistent with their best interests, to prepare for transition from foster care and assist the youth in meeting the eligibility criteria" for extended foster care. (*Ibid.*)

application, at which point CFS recommended that the Inland Regional Center (the regional center) "oversee the case." In October 2024, CFS reported that the supplemental security income application was still pending and that CFS would be working with the regional center in the following six-month period to transition Violet to be managed by the regional center as "an unconserved adult," but CFS would "continue to oversee medical and placement decisions" until then.

At the six-month status review hearings in May and November 2024, the juvenile court found that Violet made satisfactory progress toward meeting the goals set forth in the TILCP. The court also found that she met the eligibility requirements to remain under the juvenile court's jurisdiction. The court ordered jurisdiction to continue over Violet as a nonminor dependent and ordered "the county agency to supervise and report."

In the status review report filed in April 2025, CFS recommended that the case be dismissed and that juvenile court jurisdiction over Violet be discharged. CFS reported that it had agreed with the regional center to have Violet's case transitioned to the regional center to oversee her care as "an unconserved adult." The regional center would "continue to provide case management services, placement assistance, assistance with schooling, and following medical care and decisions made regarding that care."

The court held a status review hearing in May 2025, appointed a guardian ad litem for Violet, and continued the matter, which was later set for contest. Counsel for Violet and CFS filed briefs before the contested hearing, which took place in September 2025.

CFS argued that termination of the juvenile court's jurisdiction was appropriate because of Violet's "lack of participation in a 'reasonable and appropriate' transitional

living case plan." CFS reasoned that because Violet required lifelong care and would never be able to live independently, she could not participate in any TILP.

At the outset of the hearing, the juvenile court stated that it had an extensive off-the-record discussion with the parties and counsel. The court explained that the case involved a nonminor dependent who is completely under the care and management of the regional center so that "[e]verything comes from IRC." The court expressed the belief that continuing jurisdiction over Violet was not in her best interest, because there was no role for a CFS social worker to play and "[f]actually speaking, there is no articulable benefit which this nonminor receives by the County being involved."

Violet's counsel argued that she met the eligibility requirements for continuing jurisdiction as a nonminor dependent and that it would be in her best interest to remain under the court's jurisdiction. Counsel argued that it benefitted Violet to have contact with social workers, for the agency to update the court regularly about Violet, and for Violet's interests to be represented by both an attorney and a guardian ad litem. Violet's guardian ad litem also opposed termination of jurisdiction. The guardian ad litem stated that it would be better to have "more people at [Violet's] disposal than not" and added that under juvenile court jurisdiction Violet has a social worker checking on her and a lawyer representing her, so all of them can assist Violet "if something pops up."

The juvenile court terminated jurisdiction, finding that continued jurisdiction was not in Violet's best interest and "because it's not in the minor's best interest, the nonminor is no longer eligible for the program." The court acknowledged that Violet was "technically eligible" to continue as a nonminor dependent, but the court explained

5

that "although the youth is eligible, the youth is no longer meeting the best interest by maintaining eligibility, so the Court finds they are no longer eligible." The court reasoned that even though Violet would no longer have a dependency attorney representing her or a social worker from CFS checking on her, "more is not better," and having multiple governing agencies could be "truly harmful." In the minute order from the hearing, the court again found that Violet had made satisfactory progress toward meeting the goals in her TILCP.

DISCUSSION

Violet contends that (1) the juvenile court applied the wrong legal standard when terminating jurisdiction over her and (2) she did not meet the requirements for termination of jurisdiction under the correct standard. We agree on both points.

A juvenile court "may retain jurisdiction over and provide extended foster care benefits to a nonminor dependent until he or she reaches the age of 21." (*In re Leon E.* (2022) 74 Cal.App.5th 222, 229; §§ 303, 11400, subd. (v); unlabeled statutory references are to this code.) "A nonminor dependent is a foster child who has attained the age of 18, is under the care and responsibility of the child welfare department, and is participating in a TILCP as described by section 11403." (*Leon E.*, at p. 229; § 11400, subd. (v) (section 11400(v)).)

Section 391 authorizes a juvenile court to terminate jurisdiction over a nonminor dependent "only in three narrowly defined circumstances." (*In re Nadia G.* (2013) 216 Cal.App.4th 1110, 1113 (*Nadia G.*).) Those circumstances are (1) "the nonminor does not wish to remain subject to dependency jurisdiction" (§ 391, subd. (e)(1)(A)), (2) "the

nonminor is not participating in a reasonable and appropriate" TILCP (§ 391, subd. (e)(1)(B)), or (3) "after reasonable and documented efforts the nonminor cannot be located" (§ 391, subd. (f)). (See Cal. Rules of Court, rule 5.555(d)(2)(A); *Nadia G.*, at p. 1118; *In re H.C.* (2017) 17 Cal.App.5th 1261, 1266 (*H.C.*).)

We review for abuse of discretion a juvenile court's decision to terminate jurisdiction over a nonminor dependent. (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 289 (*Shannon M.*); *Nadia G.*, *supra*, 216 Cal.App.4th at pp. 1118-1119.) Application of an incorrect legal standard constitutes an abuse of discretion. (*Shannon M.*, at p. 289.) We independently review whether a court applied the correct legal standard. (*Id.* at p. 288.)

The juvenile court applied the wrong legal standard when it terminated dependency jurisdiction over Violet. The court did not find that she met any of the requirements for termination of jurisdiction under section 391, and the court does not appear to have considered the issue. Rather, the court acknowledged that Violet was "technically eligible" to continue as a nonminor dependent, but the court terminated jurisdiction anyway because, in the court's view, continuing jurisdiction was not in her best interest. That was error. The juvenile court was required to continue jurisdiction over Violet unless it found that one of the conditions under section 391 was satisfied. (§ 391, subds. (e)-(f).)

The juvenile court's error in applying the wrong legal standard was not harmless. (*Shannon M.*, *supra*, 221 Cal.App.4th at p. 302 [juvenile court error in applying wrong

legal standard to terminate nonminor's case not harmless].) We need not decide what harmlessness standard applies, because the error was prejudicial under any standard.

None of the circumstances that would have permitted the juvenile court to terminate jurisdiction over Violet as a nonminor dependent was present. (§ 391, subds. (e)-(f).) Violet's whereabouts were known, her guardian ad litem wanted jurisdiction to continue, and Violet was participating in a reasonable and appropriate TILCP. Violet's TILCP included the same TILP throughout her participation in extended foster care as a nonminor dependent. CFS consistently reported, and the juvenile court repeatedly found, that Violet was making satisfactory progress toward meeting the goals in that plan. The juvenile court even made that finding at the termination hearing. And the finding was supported by substantial evidence because CFS reported in its latest status review report (as it had in previous reports) that Violet was making satisfactory progress toward satisfying those goals. Given that none of the requirements for termination of jurisdiction under section 391 was satisfied, the juvenile court did not have authority to terminate dependency jurisdiction over Violet. (§ 391, subds. (e)(1), (f); Cal. Rules of Court, rule 5.555(d)(2)(A); *Nadia G.*, *supra*, 216 Cal.App.4th at p. 1118; *H.C.*, *supra*, 17 Cal.App.5th at p. 1261.) Consequently, Violet would have obtained a more favorable result (namely, the continuation of jurisdiction) but for the juvenile court's application of an incorrect legal standard, so the court's error was prejudicial.

CFS's arguments to the contrary are unavailing. CFS contends that Violet was not participating in a reasonable and appropriate TILCP when the juvenile court terminated jurisdiction, because Violet was medically incapable of living independently. (§ 391,

8

subd. (e)(1)(B).) CFS also argues that Violet did not qualify as a nonminor dependent because by the time of the termination hearing CFS "did not have any involvement whatsoever in [Violet's] care and medical management," so "it is reasonable to assume that [Violet] was no longer participating in the transitional independent living plan." Neither argument is supported by the record. At the termination hearing, the juvenile court expressly found that Violet had made satisfactory progress toward her TILCP goals, and, as we have already explained, that finding is supported by substantial evidence, namely, CFS's most recent status review report.

CFS also contends that because the regional center had taken on all of the placement and care responsibilities for Violet, she did not qualify as a nonminor dependent under section 11400(v), which requires that the nonminor dependent be "in foster care under the placement and care responsibility of the county welfare department." We disagree. At the last status review hearing before the termination hearing, the court found that Violet remained eligible for dependency jurisdiction. The court accordingly ordered that she remain under the court's jurisdiction as a nonminor dependent, and the court ordered "the county agency to supervise and report." That order was not superseded by any subsequent court order relieving CFS of supervisorial responsibility, so it remained effective at the time of the termination hearing. CFS's delegation of various care and case management functions to the regional center likewise did not eliminate CFS's court-ordered responsibility to supervise Violet's care and see to her well-being. Violet thus remained "in foster care under the placement and care responsibility of the county welfare department." (§ 11400, subd. (v)(2).)

For all of the foregoing reasons, the juvenile court prejudicially erred by terminating dependency jurisdiction over Violet.[2]

DISPOSITION

The September 23, 2025, order terminating jurisdiction is reversed. The juvenile court is directed to reinstate dependency jurisdiction and continue Violet as a nonminor dependent. The remittitur shall issue immediately pursuant to the parties' stipulation. (Cal. Rules of Court, rule 8.272(c)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

CODRINGTON

Acting P. J.

LEE

J.

---

[2]     Because the juvenile court did not have authority under section 391 to terminate jurisdiction over Violet, we need not address the juvenile court's best interest determination. We nevertheless note that Violet is a vulnerable individual without any family support. There is no indication in the record that having a social worker visit Violet once monthly to ensure that she was receiving proper care and treatment was in any way disruptive to that care. Moreover, while under the juvenile court's jurisdiction, Violet had an attorney and a guardian ad litem advocating for her interests. Without juvenile court jurisdiction, Violet will have no such protections, as long as she does not have a conservator.