[No. C021848. Third Dist. June 26, 1996.]

In re NATASHA H., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
NATASHA H., Defendant and Appellant.

## COUNSEL

Lori Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Susan M. Fisher for Plaintiff and Respondent.

## OPINION

RAYE, J.—Every year thousands of children, victims of neglect or abuse, move through the juvenile court system. Almost always the question is whether the best interests of the child would be best served by restoration of physical custody to the parents or transfer to some other guardian considered better suited to provide for the child's health and welfare. This case is different; no parent seeks custody, and the child protective agency presents no plan of adoption, guardianship or foster placement to provide for the child's best interests through some alternative custodial arrangement. Instead the agency, having removed the child from parental custody and secured an adjudication of dependency, is "throwing in the towel." It seeks relief from the burden of a troublesome child who has resisted efforts to help at every turn. The juvenile court terminated the minor's status as a dependent child, remanding her "to her own care and custody." Though we appreciate the challenge of helping an obstreperous child, we agree with the minor the court exceeded its statutory authority in terminating her dependency status. Accordingly, we shall reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

At age 12 Natasha's father had died and she lived with her mother, a homeless heroin addict, beset with all the problems associated with homelessness and parental drug addiction. She was left to live with friends while her mother eked out an existence on the streets. The inability of one such friend to care for her resulted in a call to law enforcement and placement in protective custody. On October 31, 1991, a Welfare and Institutions Code section 300 petition was filed alleging Natasha's mother failed to provide proper care and supervision and the whereabouts of the mother were unknown. (Welf. & Inst. Code, § 300; further section references are to that code.) A social worker report disclosed that Natasha, who had been exposed to heroin before birth, was "having a difficult adjustment at school," would probably require special education classes, suffered from enuresis and, prophetically, "has an extremely difficult time following rules." The juvenile court sustained the petition and adjudged the minor a dependent child.

Natasha, while appearing to adjust well to her first foster home placement, began a pattern of conduct which has become habitual: she ran away. Between the March 16, 1992, jurisdictional hearing and the six-month hearing on September 11, 1992, Natasha ran away from her foster home twice, the receiving home twice, and a group home once. Following a period of relative stability, the 12-month review hearing was held on March 5, 1993. The juvenile court terminated reunification services and selected long

term foster care as the permanent plan. In May 1993 Natasha again ran away and was found living with her mother.

In a report prepared on August 14, 1995, the social worker stated the minor's whereabouts were unknown. According to the report, the minor had not attended school since May 1993. The report also noted the minor had been arrested for burglary and possession of stolen property in February 1995. There was a possibility the minor would become a ward of the juvenile court pursuant to section 602.

Respondent department of health and human services (DHHS) recommended termination of the minor's dependency status. In support of that recommendation, the social worker stated: "[The minor] has been AWOL from placement for approximately two years. In addition, the minor has been uncooperative and resistant to placement." The social worker also opined the minor "appear[ed] to be oblivious to her Dependency status."

At the August 25, 1995, review hearing, in the absence of the minor, her counsel objected to termination of the dependency. According to counsel, "no legal basis" existed for such an action. Counsel argued conditions requiring jurisdiction under section 300 remained. DHHS responded that termination of the minor's dependency status was proper, "based on the fact that the minor runs away from every placement."

In granting the request of DHHS, the juvenile court stated as follows: "It is clear that this minor is probably at high risk. The last time that she had contact with any friend or relative—it was actually a letter to her former foster parents which apparently was last year at Thanksgiving or at Christmas. [¶] The minor had an injured lip, dark circles under her eyes, was very thin and approximately four months pregnant. She apparently lives on the streets. We have no idea how she supports herself. Her mother is a known heroin addict and has been for a considerable period of time, and her mother has been known to have an unstable transient lifestyle. [¶] For the past two years, the department has endeavored to provide case management or services to this minor and has been unable to do so. The minor is now a little over 16-and-a-half years old. It is clear she considers herself to be emancipated; and while this Court would greatly desire to give her intensive services, it does not appear that there's any likelihood that this can be accomplished. [¶] For those reasons, I find that conditions which may still exist which may justify continued dependency of this minor, that to do so would be an illusory act in that this minor has demonstrated she has no intention of cooperating with the services of the department, and I think that the department's own assessment that the minor appears to be oblivious of

her dependency status is an accurate one. [¶] Therefore, the department's request to terminate dependency in this matter is hereby granted. Dependency is terminated for this minor."

The juvenile court ordered the minor "remanded to her own custody at this time."

## DISCUSSION

■ The minor contends that "[b]y terminating [her] status as a dependent child while acknowledging conditions still exist which would justify dependency, the juvenile court acted beyond its statutory authority." According to the minor, the court's action did not serve her best interests, and her refusal to cooperate with DHHS cannot justify termination of dependency. The minor also attacks the court's order remanding her to her own custody, arguing such an order lacks any legal basis.

DHHS asserts the orders made by the juvenile court promote the best interests of the minor and are supported by substantial evidence. According to DHHS, it would be "futile" to continue the dependency, and the evidence shows no need exists to provide supervision for the minor. DHHS also notes the minor recently was the subject of a proceeding pursuant to section 602.[1]

Section 366 provides in part: "(a) The status of every dependent child in foster care shall be reviewed periodically as determined by the court but no less frequently than once every six months . . . . The court shall determine the continuing necessity for and appropriateness of the placement . . . . [¶] (b) Subsequent to the hearing periodic reviews of each child in foster care shall be conducted pursuant to the requirements of sections 366.3 and 16503."

At the time of this dependency proceeding, the version of section 366.3 in effect provided in part as follows: "(c) If the minor is in a placement other than a preadoptive home or the home of a legal guardian and jurisdiction has not been dismissed, the status of the minor shall be reviewed every six months. This review may be conducted by the court or an appropriate local agency; the court shall conduct the review upon the request of the minor's parents or guardian or of the minor and shall conduct the review 18 months after the hearing held pursuant to Section 366.26 and every 18 months

---

[1]We take judicial notice of a petition filed in a section 602 proceeding against the minor, in which it is alleged the minor committed an attempted murder and received stolen property. (Evid. Code, § 452, subd. (d)(1).) Respondent's motion to augment the record is thus moot.

thereafter. The reviewing body shall inquire about the progress being made to provide a permanent home for the minor and shall determine the appropriateness of the placement, the continuing appropriateness and extent of compliance with the permanent plan for the child, the extent of compliance with the case plan, and the adequacy of services provided to the child. The review shall also include a determination of the services needed to assist a child who is 16 years of age or older make the transition from foster care to independent living. [¶] Each licensed foster family agency shall submit reports for each minor in its care, custody, and control to the court concerning the continuing appropriateness and extent of compliance with the minor's permanent plan, the extent of compliance with the case plan, and the type and adequacy of services provided to the minor. [¶] Unless their parental rights have been permanently terminated, the parent or parents of the minor are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the interests of the minor, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the minor. In those cases, the court may order that further reunification services be provided to the parent or parents for a period not to exceed six months."

Section 390 provides in part that "[a] judge of the juvenile court . . . may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent . . . of the minor is not in need of treatment or rehabilitation."

The minor contends that, in deciding whether to dismiss a dependency, the juvenile court must be guided by the provisions of section 390, which permits dismissal of the dependency petition if it is in the minor's best interests and the parent no longer needs services. DHHS disagrees, arguing section 390 is not the exclusive means by which the court may terminate a dependency proceeding. According to DHHS, the juvenile court also has the discretion to end a dependency pursuant to section 366. Moreover, relying on *In re Sarah M.* (1991) 233 Cal.App.3d 1486 [285 Cal.Rptr. 374], DHHS argues termination is proper on a showing of the lack of any need for continued supervision of the minor.

Section 390 permits a court to "dismiss the petition" or "set aside the findings and dismiss the petition." The juvenile court did not dismiss the dependency petition or set aside the findings. Thus, by its terms, section 390 does not apply. Moreover, as DHHS properly recognizes, section 390, if applicable, compels the juvenile court to find the dismissal is required in the interests of the minor, and that the parent is no longer in need of treatment or

rehabilitation. The court made no such findings nor, on this record, could it have done so.

In *In re Sarah M.*, *supra*, 233 Cal.App.3d at pages 1489-1491, the juvenile court awarded the previously noncustodial parent custody of the minor and terminated its jurisdiction over the minor. Affirming those orders, the court of appeal held it is proper to terminate jurisdiction if the record shows continued supervision no longer is necessary. (233 Cal.App.3d at pp. 1498-1500.) Considering the applicability of section 390, the court concluded the juvenile court had made none of the findings required by that statute. (233 Cal.App.3d at pp. 1497-1498.)

*In re Sarah M.*, *supra*, does not help DHHS. There, the juvenile court placed the minor with a parent, pursuant to section 361.2. Thus, no need existed for further supervision of the minor. In this case, all of the facts presented point to the opposite conclusion: the minor remains in need of continued supervision. Her mother has demonstrated a continuing unwillingness to assume any parental role, and the minor's father passed away in 1991.

This case bears little resemblance to *In re Sarah M.* However, *In re Rosalinda C.* (1993) 16 Cal.App.4th 273 [20 Cal.Rptr.2d 58] is squarely on point. There, the juvenile court ordered long-term placement with the minor's grandmother and dismissed the proceedings. (*Id.* at pp. 276-277.) On appeal, the court reversed and remanded for further proceedings, holding the juvenile court lacked the authority to order the dismissal. (*Id.* at pp. 277-279.)

Reviewing the "governing statutes," the court in *In re Rosalinda C.* concluded no authorization exists for termination of a dependency proceeding where the minor is in a long-term placement.[2] (16 Cal.App.4th at p. 278.) The court distinguished *Sarah M.*, noting "it involved placement with a parent." (*Id.* at p. 279.) In contrast, in *In re Rosalinda C.*, "the court ordered a long-term placement, a situation in which the statutes appear to contemplate continued supervision. A juvenile court has a continuing responsibility to account for the welfare of a dependent child under its jurisdiction, wherever placed, unless and until a permanent and stable home is established. In the absence of an adoption or legal guardianship, continued supervision is necessary because there is no person with legal custody of the child and no assurance the placement is permanent. On this record, dismissal of the dependency was premature." (16 Cal.App.4th at p. 279, fn. omitted.)

---

[2]*In re Rosalinda C.* did not consider section 390. (16 Cal.App.4th at pp. 277-279.)

We find the reasoning of *In re Rosalinda C.* persuasive. Although the minor's mother may retain legal custody, from the record it is apparent the minor remains in need of supervision. In its comments, the juvenile court implicitly acknowledged as much. Obstinacy and defiance test the patience of adults charged with the tending to the needs of minor children. Under the trial court's reasoning the more obstinate the child the greater the justification for terminating jurisdiction. We disagree. As much as the minor might wish to be rid of court supervision, and as frustrating as her conduct might be to DHHS and the court, her misbehavior and lack of cooperation do not justify termination of her dependency status absent extraordinary circumstances not present here that make it in her best interest to do so.[3]

### DISPOSITION

The orders terminating the minor's status as a dependent child and remanding her to her own care and custody are reversed, and the matter remanded for further proceedings.

Davis, Acting P. J. and Morrison, J., concurred.

A petition for a rehearing was denied July 26, 1996.

---

[3]That the minor *may* become a ward of the court pursuant to section 602 cannot justify termination, at least unless and until that status is achieved and any appeal final.