Filed 1/22/25  In re A.W. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | C099970 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD241295) |
| Plaintiff and Respondent, | |
| v. | |
| T.W., | |
| Defendant and Appellant. | |

Appellant T.W. (mother), mother of the minor, appeals from the juvenile court's order denying her request for a continuance and terminating dependency jurisdiction. (Welf. & Inst. Code, §§ 300, 388, 395.)[1]  She contends the juvenile court abused its discretion in denying the request to continue the hearing on the section 388 petition

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

seeking termination of dependency jurisdiction, in granting that petition, and in improperly delegating visitation decisions to the minor. We affirm the juvenile court's orders.

## I. BACKGROUND

On April 30, 2021, the Sacramento County Department of Child, Family and Adult Services (Department) filed a dependency petition on behalf of the minor (then age nine) and her siblings[2] pursuant to section 300, subdivisions (b) and (c), alleging failure to protect and serious emotional harm to the children due to physical abuse resulting from mother's untreated mental health issues and failure to meet the minor's mental health needs. It was alleged mother used excessive physical punishment, hit the minor and her siblings with a belt, threw a can at the minor hitting her in the head, and threw a cell phone at the minor chipping her front tooth. It was further alleged that the minor and her siblings did not feel safe at home with mother due to her behavior. The minor had been diagnosed with adjustment disorder with mixed anxiety and depressed mood and mother neither supported the minor's use of medication nor met the minor's behavioral needs. There were no allegations in the petition with respect to the minor's father.

On May 7, 2021, the juvenile court ordered the minor and her siblings detained. The minor, who was herself in need of specialized mental health treatment, had previously been placed in a therapeutic foster home just prior to the filing of the petition. However, after exhibiting self-harming behaviors, she was taken to the emergency room for a section 5150 psychiatric assessment and then placed in a different foster home. The juvenile court ordered reunification services and supervised visitation for mother.

Mother denied having any mental health issues of her own and stated she did not support the use of prescription medications to address the minor's mental health needs.

---

[2] The minor's siblings are not parties to this appeal and will only be discussed when relevant to the issues at hand.

Father lived in Texas and was employed full-time as a forklift operator; father's wife worked for the Texas Department of Child Family Services (Texas DCFS). It had been more than 11 years since father had had regular contact with mother, and he was unaware of her untreated mental health issues or that she was physically abusing the children. He had not had regular contact with the minor over the years and had not spoken with her for three years despite having purchased a cell phone for her. When he did speak with the minor, she did not mention mother's abuse. Father was not aware of the minor's mental health issues, that she had been placed on section 5150 psychiatric holds several times since March 2021, or that mother did not support using prescription medication to address the minor's mental health issues. According to father, mother refused to sign custody of the minor over to him and, when he asked for visits with the minor, she always made excuses and would not allow it. Mother also forbade the minor from telling father where she was living. Father wanted custody and care of the minor because he was concerned about mother's ability to parent the minor appropriately.

The social worker spoke with the minor who was doing well in her foster placement. Although the court ordered supervised visitation twice weekly for mother, the minor was unsure if she wanted visitation with mother.

The Department expressed its concern that mother would not seek treatment for her own mental health which would continue to impair her judgment and ability to provide adequate and necessary care for the minor and her siblings. Despite having services in place, mother continued to display behaviors indicative of mental health issues that required treatment. Father had not had an ongoing relationship with the minor and the details of his circumstances were unknown at the time. Therefore, the Department recommended the juvenile court order the minor and her siblings removed from both parents and placed in out-of-home placement.

In June 2021, the Department reported that the minor had been getting upset during telephone and video visits with mother, particularly when mother started yelling or

3

said things that triggered the minor. Father was being assessed by ICPC (Interstate Compact on the Placement of Children) for possible placement. The juvenile court ordered the Department to facilitate virtual visits between father and the minor and to consider the minor's desires in its administration of the visits.

The following month, the minor had a disagreement with her foster parent and went into a "rage," throwing things, yelling and screaming, breaking plates, and kicking the foster parent. When the foster parents could not calm the minor, they called law enforcement, who took the minor to the hospital for evaluation. The minor's therapist later learned the minor had spoken with mother, who " 'riled' " her up asking questions about why the minor had not called. The therapist noted that communication with mother was often " 'triggering and abusive' " for the minor who then became upset and could not be deescalated. The foster parent stated it would not be appropriate to place the minor and her younger sibling together due to concerns about the minor's ongoing behavioral issues. Mother was still refusing psychotropic medication for the minor and the Department had growing concerns about mother's mental health and continued unhealthy interaction with the minor. The juvenile court ordered the Department to find the minor a new placement immediately.

On July 29, 2021, the Department reported the minor was moved to her new foster placement on July 17, 2021, with no issues reported. The minor informed her new foster parents that she did not want to visit with mother. Father's ICPC was still pending, and the Department opined that it would be detrimental for the minor to be placed with father in light of her ongoing serious mental health issues. The following day, the juvenile court ordered supervised in-person or virtual visitation between father and the minor.

In August 2021, the Department filed a notice of placement disruption stating the minor had been moved from her current placement to respite care due to her negative behavior. The social worker continued to look for an appropriate placement for the minor while the minor remained in respite care and father's ICPC was still pending. The

4

juvenile court sustained the allegations in the petition and found the minor and her siblings dependents of the juvenile court.

In September 2021, the social worker filed a section 388 petition requesting the juvenile court limit visits between mother and the minor to a therapeutic setting with a frequency recommended by a clinical supervisor. The petition alleged visits between mother and the minor "destabilize[d] the [minor], resulting in tantrums, defiance, and dangerous behaviors. These behaviors have resulted in one placement change and . . . the [minor] knows what to say to trigger the mother and reveals details about the location of the foster home." The juvenile court granted the petition and ordered therapeutic visits to occur a minimum of once per week.

In October 2021, the Department reported that father's ICPC was approved. It was noted that, while the ICPC assessed the minor would be safe in father's home, the Department had concerns that father had not historically been involved in the minor's life nor did he fully understand her needs. For example, father had not had the minor in his care in three years and then only for a short period. Also, father was not aware of the minor's high-risk behaviors. Father stated he wanted to be involved in the minor's life, but he had only participated in the first five minutes of a recent child and family team meeting and he failed to show up for one of four scheduled visits. Before the Department would recommend placement of the minor with father, father needed to consistently visit and develop a bond with the minor and attend child and family team meetings to fully understand the challenges facing the minor. On October 15, 2021, the juvenile court agreed and ordered in-person visitation between the minor and father at father's home in Texas.

In January 2022, the Department reported that mother was refusing communication and contact with the social worker and, although employed, was living in her car. The minor was struggling in her placement, displaying self-harming behavior as well as harm toward others in the home. She was receiving wraparound services from a

team that included a therapist, a psychiatrist, a family advocate, and a skills trainer, but she struggled to control her outbursts which led to aggression toward others, property destruction, defiance, and self-harming behaviors. Her escalating behaviors often led to law enforcement intervention and section 5150 psychiatric holds. However, the caregiver informed the minor's psychiatrist that medication helped to stabilize the minor.

Father was participating in virtual visits with the minor once a week. Although visits were reportedly positive, the minor began to refuse visits following the October 15, 2021, order for in-person visits at father's home in Texas, stating father was "weird" and claiming he "hit" mother. The minor was, however, open to visiting father in Sacramento and a supervised visit was arranged for November 13, 2021. The visit was reportedly positive with no concerns. Thereafter, the minor refused to visit father in Texas, stating she did not feel comfortable going to Texas and would be more open to continuing virtual visits and having father visit her in Sacramento. The minor canceled a virtual visit scheduled for early-January and occasionally refused visits, but she otherwise appeared to have positive interactions with father during visits.

Mother, on the other hand, did not demonstrate proper interaction with the minor, was inconsistent in services, continued to demonstrate hostile and erratic behavior, and refused to communicate with the Department. Mother's behavior around and towards the minor had "serious, negative impact on [the minor's] well-being." She had to be redirected often during virtual visits and the minor was reportedly more disruptive, defiant, and anxious following the visits. Mother's hostility toward visitation monitors when being redirected caused the minor to become anxious. One service provider observed that mother " 'is the destroyer of her children right now' " and " '[the minor] is the target.' " The Department recommended six additional months of reunification services for both mother and father and continued out-of-home placement for the minor.

The minor was moved to a new placement on March 30, 2022, due to her behavior toward another youth in the home. The caregiver had already submitted a 14-day notice

6

due to the minor's other behaviors which included profanity, racial slurs, throwing items around, destroying property, aggression, defiant behavior, and extreme tantrums. The minor was also reportedly getting triggered by the word "no" and when she had phone contact (without permission) with mother. There were also reports of the minor getting into a physical altercation with another youth, revealing to staff that she had a pocketknife which she allegedly stole from the Dollar Store, threatening self-harm, swinging at security staff, and telling another youth to kill herself and "get raped." The minor had been transported to the centralized placement support unit (CPSU), was placed in a new confidential placement on April 15, 2022, but was then moved back to CPSU to await placement in a short-term therapeutic program (STRTP) after she reported she did not feel comfortable living with a male.

The Department reported the minor was placed in her third confidential placement on April 29, 2022, but was removed by law enforcement on May 21, 2022, when she physically assaulted another child in the home causing physical harm and some property damage. The minor was again transported back to the CPSU. While awaiting placement in CPSU, the minor engaged in "very high[-]risk behaviors" such as verbal and physical aggression while leaving the facility without permission, getting into physical altercations with peers, physically assaulting and causing injury to CPSU staff, refusing medication, and having unauthorized contact with mother using cell phones belonging to other peers. She was either inconsistent with or refused to take her medications. On June 3, 2022, the minor was transported to the hospital on a section 5150 psychiatric hold after attempting to walk into oncoming traffic.

On June 14, 2022, the Department recommended the juvenile court terminate reunification services for both mother and father. Mother was reportedly in Mississippi with no return date, living either in her car or with the maternal great-grandmother. She refused to provide an address. Father's circumstances remained the same and he reported he was willing to build his relationship with the minor when she was mentally and

7

emotionally ready to do so.  However, the minor refused to visit or talk about father.  The minor's therapist reported that, because the minor's mental health was unstable, the topic of her relationship with father was not discussed so as not to disrupt the minor.

On June 15, 2022, the minor was placed in a temporary placement while awaiting an appropriate long-term placement.  Shortly thereafter, the minor was again taken to a hospital after exhibiting unsafe behavior and making threats of self-harm.  She was eventually discharged back to the temporary placement but, according to a qualified individual assessment (QIA) report prepared by Julie Pool, LCSW, the minor's needs and services could not be met in a home-based setting.  So, on July 25, 2022, the minor was placed at an STRTP.

On August 12, 2022, the Department reported that mother returned to California and agreed to reestablish her individual therapy and to engage in therapeutic visits with the minor.  She and the minor began having weekly therapeutic telephone visits which were supervised by a therapist from the STRTP.  However, from September 2022 through October 2022, mother would either not answer the phone or refused to speak with the minor unless the minor's siblings were also present.  Mother also continued to have unauthorized telephone contact with the minor, causing the minor to exhibit negative behaviors including violence to peers and adults, aggression, property damage, and harm to self and others.  During an October 26, 2022 scheduled telephone visit, mother became very argumentative and made several negative comments about the STRTP house manager, eventually causing the minor to become emotional and run out of the facility. Mother reportedly vacillated about whether she thought the minor should visit father in Texas, and she "manipulate[d]" the minor by telling her "bad things" father had done to mother, confusing the minor and causing her to not want to speak with or visit father.  In spite of mother's efforts, the minor had returned from an October visit with father in Texas and was very happy and looking forward to going back for another visit.

Over the course of multi-day permanency hearings in November and December 2022, the juvenile court authorized an extended visit between the minor and father in Texas, followed by two additional extensions, and ordered that the minor only be placed in an approved home or licensed facility and not be sent to the CPSU. The court ordered additional services for father and termination of services to mother.

On December 8, 2022, the Department reported that father completed anger management and parenting classes in Texas. The minor had recently been placed in her second STRTP after an extended visit with father. The juvenile court adopted the Department's recommended findings and orders, including that the social worker "must consider the [minor's] desires in its administration of the visits, but the [minor] shall not be given the option to refuse all future visits." The court also authorized another extended visit between the minor and father in Texas.

On December 21, 2022, mother filed a section 388 petition requesting that the juvenile court order an ICPC for the maternal great-uncle who resided in Louisiana and was requesting placement of all three children. Mother argued the requested change was in the best interest of the minor and her siblings to be placed with a family member who was ready, willing, and able to care for them. The juvenile court granted a hearing on the petition.

On January 3, 2023, mother filed a second section 388 petition requesting modification of the juvenile court's orders authorizing an extended visit between the minor and father and giving the Department discretion regarding supervision of visits. Mother requested the court revoke its authorization for extended visits, place the minor in a foster home near her school, and allow mother unsupervised telephone calls with the minor. Mother alleged the minor returned from a recent visit with father and claimed father got drunk and verbally assaulted her, as did the stepmother. Mother also alleged the minor claimed she was physically assaulted by staff at the group home in which she was placed, causing her to suffer minor injuries. Finally, mother alleged it would be in

9

the minor's best interest to allow her the ability to reach out to mother through unsupervised telephone calls without fear of being censored or monitored because the minor finds comfort, safety, and support when talking to mother.

The Department recommended the minor be placed at an STRTP given the conclusion set forth in the QIA report prepared by Julie Pool, LCSW, that the minor's needs and services could not be met in a home-based setting.

On January 13, 2023, the juvenile court granted both of mother's section 388 petitions, ordering that the minor be placed in a "setting that is consistent with the Court's determination, as identified on the record," granting an ICPC for the maternal great-uncle and terminating the minor's extended visit with father. The record on appeal does not contain a transcript of the January 13, 2023, hearing.

On January 31, 2023, the Department reported that mother was homeless and refusing to provide either her location or an updated mailing address. The minor was placed at an STRTP and continued to struggle with her mental health issues, refusing her medication, individual therapy sessions, and group programs. She continued to have unauthorized telephone contact with mother and required crisis intervention and assessment for psychiatric holds for behaviors including harm to self and others. Father continued to work on his relationship with the minor and was reportedly putting the minor's needs before his own.

The minor had successful visits with father in Texas in October and November 2022 and had previously reported she wanted to live with father. However, when she returned from an extended visit with father in late-November, she made an unauthorized phone call to mother and then stated she did not want to talk to father any longer because of "things she heard about him." The minor was scheduled to visit father in Texas for the December 2022 Christmas holiday, but she refused to go, stating she did not want to see father and would only speak to stepmother. When the Department offered to fly father

10

and stepmother to California to visit, the minor said she would like to visit, but " 'not right now.' "

The Department opined that placement of the minor with father was in the minor's best interest and assessed the risk of return as low, noting father maintained stable and appropriate housing, employment, and contact with the Department and the minor. However, it was noted that the minor's current refusal to visit father or participate in counseling services with him increased the risk of return and raised concerns about the minor's mental stability if she were returned to father's custody too soon. Therefore, the Department recommended the court terminate father's reunification services and approve a permanent plan of legal guardianship for the minor.

Father and stepmother traveled to California in April 2023 to visit the minor for a weekend. The visit reportedly went well and had a positive impact on the minor. Thereafter, father and the minor maintained daily telephone contact with no concerns. In May 2023, the Department reported father and stepmother had proven to be positive, reliable, and committed to the minor and her needs. Father had completed his case plan services, maintained stable and appropriate housing and employment, and maintained consistent contact with the Department and the minor.

In June 2023, the Department reported the minor had an extended visit with father in Texas which, by all accounts, went "very well." The minor reportedly had two supervised one-hour in-person visits with mother, one in March 2023 and one in April 2023. After the last visit, the minor informed staff that she did not want to have any more visits with mother, who reportedly triggered the minor and led to problematic behaviors due to past trauma the minor was still learning to process. The minor refused all approved therapeutic virtual visits with mother and reportedly only called mother to "request stuff." Staff reported the minor appeared to be happier having minimal contact with mother.

The Department recommended the juvenile court order the minor placed with father and stepmother in Texas and terminate the dependency. The Department reasoned that father and stepmother were equipped to care for the minor, had shown their commitment and willingness to meet the minor where she was, had patience when the minor was changing her mind about whether or not to visit, helped the minor through issues triggered by mother, and were well versed in the services the minor needed to be successful in their care.

On July 21, 2023, the juvenile court adopted the Department's recommended findings and orders, including the finding that the minor would remain in placement in the current STRTP with a permanent plan of returning home to father.

The August 2023 progress report stated the minor's visits with father in California went well and had a positive impact on the minor's overall well-being. Since having more visits with father, the minor appeared happier, was able to speak with less profanity, was using more appropriate language, and was able to better verbalize what she needed with regard to visitation. STRTP staff reported the minor stated she would like to move to father's home, but she feared mother would find her, hurt father's family, and take her away, as mother had threatened to do.

The Department reported that visitation with mother continued to have a negative impact on the minor, who had to block mother from repeatedly calling her on her cell phone. Mother continued to threaten the minor saying she knew where father lived and could find the minor wherever she was. The minor requested a no-contact order against mother.

The minor's STRTP staff reported the minor had proven she was able to use her coping skills when needed and was ready to step down to either father's home or a foster home. The Department agreed. On September 6, 2023, the Department filed a section 388 petition requesting the court order the minor placed with father in Texas. Amy Zerai,

12

LMFT, prepared an updated QIA report concluding that the minor's needs and services could be met in a home-based setting.

On November 3, 2023, the minor was placed on a section 5150 psychiatric hold following an incident at the STRTP. She remained at the hospital for several days and the STRTP indicated it would no longer allow the minor to return to its facility. The Department also informed the court that, given those circumstances, it elected to send the minor to visit father in Texas (where she was at the time of the hearing) in anticipation of the court's order placing her there. The parties stipulated at the November 8, 2023 hearing that the minor would testify that she was upset with the STRTP because she could not call mother, she wanted supervised telephone visits with mother, she was not ready to be placed with father, she tried to reach out to her support team, and she was willing to be placed in another STRTP.

Social worker Kathleen Houston testified the minor's visits with father were generally positive with only a few minor incidents that worked themselves out. The minor's longest visit with father was three weeks. Houston testified the minor refused to visit father twice. She also testified that mother made negative statements about father to the minor which negatively impacted the minor's relationship with father and her desire to go to his home in Texas. Mother told the minor she would find the minor wherever she was. This caused the minor to be afraid and to request that Houston obtain a restraining order against mother. Houston believed it was in the minor's best interest to be placed with father.

The juvenile court granted the Department's section 388 request to place the minor with father. The court found there was a change in circumstances in that father had been putting mental health supports in place and was ready to receive the minor, and he and the minor had had multiple visits which had gone well overall. The court found placement with father was in the minor's best interest based on the most recent QIA report indicating the minor was ready to step down to a family-based setting, father was

13

ready and willing to take the minor in, and there was no evidence father was a danger to the minor. The court also found placement with father was in the minor's best interest given the stability it would provide for the minor. The court noted there was no other STRTP option, and no relative or other person had been approved for placement of the minor, including mother. The court ordered the minor placed with father, with visitation between mother and the minor to be determined. At the court's direction, the Department promptly filed another section 388 petition requesting that the court terminate dependency jurisdiction and award full legal and physical custody of the minor to father.

At the commencement of the November 17, 2023 hearing on the Department's section 388 petition seeking termination of dependency jurisdiction, the minor's counsel, joined by mother's counsel, requested the hearing be continued, arguing the minor had only been placed with father in Texas for a little over a week and the minor's counsel had not yet had an opportunity to have an investigator visit the minor in her placement to ascertain the minor's well-being, as was their standard practice before agreeing to close a case. Father objected to the request. The court denied the request for a continuance, noting social worker Houston's representation that father's home was very appropriate, clean, and safe, and stating the case had been prolonged for "quite a bit of time already" and the minor needed stability. The court added that, every time the case was open, "something comes up that kind of puts a monkey wrench in everything" and "just putting stability in a kind of more permanent order will kind of settle things and not give the appearance that there's an option to change things at the will of [the minor]."

Next, the court granted the Department's section 388 request to terminate dependency jurisdiction, finding there was a change in circumstances and the request was in the minor's best interest based on the findings set forth in its November 8, 2023 order and on social worker Houston's representation that everything in father's home was appropriate. With regard to visitation between mother and the minor, the court ordered a minimum of one virtual visit per week and two telephone visits per week, supervised at

14

father's discretion.  The court also ordered a minimum of three in-person visits per year, each lasting a minimum of five hours, supervised by father or his designee.  The court added, the " '[minor] can refuse visits,' but that's up to the [minor]."  The court adopted the Department's recommended findings and orders as modified on the record, awarded sole legal and physical custody to father, and terminated dependency jurisdiction.

## II.  DISCUSSION

*A.      Denial of Request for Continuance Was Proper*

Mother contends the juvenile court abused its discretion when it denied the minor's request, joined by mother, to continue the hearing on the Department's section 388 petition to terminate dependency jurisdiction.  She argues that further information regarding the minor's status after recently having been placed with father in Texas was necessary to confirm the placement was stable and the minor's complicated needs were being met.  We find no abuse of discretion.

Section 352, subdivision (a)(1) provides that a juvenile court may continue a hearing if it is not "contrary to the interest of the minor."  "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (§ 352, subd. (a)(1).)  A continuance may be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance."  (§ 352, subd. (a)(2).)  "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance."  (§ 352, subd. (a)(3).)

We review a juvenile court's refusal to grant a continuance for an abuse of discretion.  (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.)  We " 'consider all the

evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

In this case, the juvenile court acted within its discretion in refusing to continue the hearing. Minor's counsel requested a four-week continuance arguing that, because the minor had only been at father's home in Texas for a week, counsel's investigator had not had time to complete their usual home visit to determine the minor's well-being. Mother's counsel joined but added no additional argument. Social worker Houston, who traveled to father's home in Texas with the minor and with whom the minor spoke frequently, represented to the court that she personally saw father's home and found it to be "very appropriate," "clean," "safe," and free of clutter. The court noted it was not the first time the minor had stayed in father's home and that father and stepmother both presented to be very appropriate. The court focused on the minor's need for a prompt resolution of her custody status, finding the case had been prolonged for "quite a bit of time already" and it was imperative that the minor have stability in her life and get settled in a home with a father who loved her and was going to take care of her and be there for her rather than "running around and switching" placements all the time.

Mother claims a continuance was necessary given the minor's recent section 5150 hospitalization and her long history of significant emotional and behavioral challenges. We disagree. The minor's emotional and behavioral challenges were present in varying degrees throughout the entire two and one-half plus years the dependency proceedings had been ongoing, with several section 5150 hospitalizations during that time period. But while there had been numerous placement changes due to the inability of caretakers to manage the minor's extreme and often troubling outbursts, father proved to be capable of caring for the minor when she was with him. Although there were some setbacks and regressions along the way, father and the minor were able to work things out and the minor was reportedly developing a closer relationship with father, as demonstrated by a

16

change in her communication and overall well-being. The most recent QIA report concluded the minor was ready to step down to a family-based setting and father was not only ready and willing to take the minor in but was willing to put mental health supports in place, and he already had a significant support system (his extended family) with whom the minor was familiar.

Mother also claims a continuance was necessary given the minor had sometimes objected to placement with father and the fact that she had never spent more than three weeks with father. We are not persuaded. The minor traveled to Texas and spent time with father and his family in October 2022 and November 2022, both times returning happy and expressing her desire to live with father. Father and stepmother traveled to California to visit the minor, and father and the minor maintained daily telephone contact. The only time the minor expressed not wanting to talk to or visit father was following unauthorized telephone conversations with mother; otherwise, the minor was developing a bond with father and was gradually becoming more comfortable with the idea of living with him, her stepmother, and her stepsister in Texas, which in turn was having a positive impact on her emotional and behavioral challenges. Any perceived lack of time the minor previously spent with father was not indicative of her safety or stability in father's home, nor was it the proper measure of whether her "complicated needs" were being met. Father completed his services, had successful in-person visitation with the minor during which he applied various tools to deescalate her when necessary, maintained consistent telephone contact with her, and had been putting mental health supports in place in preparation to bring her into his home and his life.

There simply was no evidence the minor was at risk when in father's care and custody either in his home or otherwise. The minor was ready for in-home placement, and father was consistent and stable and he and stepmother were ready to receive the minor in their home on a permanent basis. The juvenile court did not abuse its discretion

17

in finding prompt placement with father was in the minor's best interest and denying the request to continue the hearing on the Department's section 388 petition.

B. *Termination of Dependency Jurisdiction Was Proper*

Next, mother contends the juvenile court abused its discretion when it granted the Department's section 388 petition to terminate dependency jurisdiction. She argues termination was not in the minor's best interest, the decision to terminate jurisdiction was founded on the improper basis that there was no other option for the minor's placement, the change of circumstances alleged by the Department was a legal fiction, there was insufficient evidence that father and stepmother were adequately prepared to care for the minor, and there was insufficient evidence that the court's continued involvement was unnecessary. These claims lack merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minor's best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).) In assessing the petition, the court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

A juvenile court "enjoys wide discretion to make any orders necessary to protect the dependent child [citation], including 'all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child' [citation] and those orders directed to the parents of a dependent child that it 'deems necessary and proper for the best interests of or for the rehabilitation of the minor' [citation]. That authority necessarily includes, in an appropriate circumstance, discretion to terminate dependency jurisdiction when the child is in parental custody and no protective issue remains." (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 207.)

18

We review for abuse of discretion a juvenile court's decision to deny a section 388 petition (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965) and to terminate dependency jurisdiction (see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300).

Here, the record supported the Department's argument of changed circumstances. Father successfully completed his case plan services, maintained stable and appropriate housing and employment, maintained consistent contact with the minor and the Department, had successful visits with the minor, was reportedly able to work with the minor to resolve any minor issues that arose, and he and stepmother demonstrated an ability to care for the minor and her needs. The minor had proven to STRTP staff and the Department that she was able to use her coping skills when needed and was ready to step down to father's home. Her visits with father were generally positive.

Mother argues the court's reliance on the appropriateness of father's home was insufficient because it failed to take into account the minor's mental health history or whether father was equipped to handle her behavioral and emotional challenges. She also asserts there had been no change in the seriousness of the minor's mental health and behavioral challenges, as demonstrated by the fact that the minor was terminated from her fourth STRTP and briefly hospitalized after a section 5150 psychiatric hold on November 3, 2023, shortly before the court terminated dependency jurisdiction. We disagree. The court was well aware of the minor's history, having presided over the case for its entirety and having reviewed the Department's reports for the hearing. Father and stepmother were equipped to care for the minor, had shown their commitment and willingness to meet the minor where she was, had patience when the minor was changing her mind about whether she would visit, helped the minor through issues triggered by mother, and were well versed in the services the minor needed to be successful in their care. With regard to the November 3, 2023 psychiatric hold, the parties stipulated that the minor's behaviors were mainly a response to STRTP staff prohibiting her from

19

contacting mother, a problem that would be a nonissue after termination of dependency jurisdiction because father was amenable to the minor and mother having as much telephone contact as they desired. Despite the November 3, 2023 incident, the minor's overall mental health and behavior had reportedly improved.

We are similarly unpersuaded by mother's assertion that there was insufficient evidence that father and stepmother were adequately prepared to care for the minor without the court's continued involvement. Again, the minor's behavior was not without problems but was gradually improving. Visits with father at his home in Texas generally went well. Father had been putting mental health supports in place in preparation for the minor's arrival, and the minor's stepmother worked for Texas DCFS which would presumably give her, at the very least, a resource for support and information. And while mother argues there was no evidence father and stepmother "received the kind of training required to successfully meet [the minor's] complex needs," there was sufficient evidence they had the ability to assemble a team of professionals (e.g., a therapist, a psychiatrist, etc.) to assist them in doing so.

The record also supported the Department's argument that termination of dependency jurisdiction was in the minor's best interest. Mother again argues that the minor had not been in father's home in Texas long enough to gauge whether father and stepmother could successfully manage her behaviors and be protective without Department involvement and court oversight. But, as discussed above, father and stepmother had already been successfully managing the minor's behaviors during extended visits, were putting mental health supports in place, and had the ability to gather the appropriate professionals to provide aid and support if and when necessary. The most recent QIA report concluded the minor was ready to step down to a family-based setting such as father's home, and father and stepmother provided the stability the minor needed. Indeed, the minor's counsel reported the minor was "adjusting well in the placement" and

counsel was "happy with the support [the minor was] receiving from father and step[]mother."

Mother also argues the juvenile court's reliance in part on the lack of alternative placements for the minor as one of the bases for termination of dependency jurisdiction was improper. She relies on two cases previously before this court, *In re I.G.* (2014) 226 Cal.App.4th 380 and *In re Natasha H.* (1996) 46 Cal.App.4th 1151, where the respective juvenile courts simply "threw in the towel" and terminated dependency jurisdiction rather than serve the minor's best interests by considering other viable alternatives for placement. (*In re I.G., supra*, at p. 388; *In re Natasha H., supra*, at p. 1153.) Both cases are factually distinguishable.

*In re I.G.* involved a minor who was detained from her mother's custody due to her mother's substance abuse. (*In re I.G., supra*, 226 Cal.App.4th at pp. 382, 384.) After finding continuance in the home would be contrary to the minor's welfare and making her a dependent, the juvenile court then returned the minor to the still-offending mother, who was "drug dependent, absent, and refusing services," and terminated dependency. (*Id.* at p. 387.) This court reversed, concluding that the juvenile court essentially "threw in the towel," leaving the minor to manage her own protection and welfare when she was clearly in need of continued supervision and her mother was unwilling or unable to do so. (*Id.* at pp. 388-390.)

Similarly, in *In re Natasha H.*, the minor's father was deceased and her mother was a homeless heroin addict who left her in the care of friends. (*In re Natasha H., supra*, 46 Cal.App.4th at p. 1153.) The juvenile court took jurisdiction and adjudged the minor a dependent, after which the minor became a habitual runaway from placements, failed to attend school, and was arrested for several theft crimes. (*Id.* at pp. 1153-1154.) Two years later, the juvenile court terminated dependency and remanded the minor to her own custody. The court found the minor was " 'probably at high risk,' " she considered herself to be emancipated, the agency had endeavored to provide her with services but

21

was unable to do so, and conditions which might still exist and which might justify continued dependency " 'would be an illusory act' " in that the minor demonstrated she had no intention of cooperating with the agency. (*Id.* at pp. 1154-1155.) This court found the juvenile court exceeded its statutory authority and reversed, finding as it did later in *In re I.G.* that the minor was still in need of supervision and her mother was unwilling or unable to do so. (*Id.* at pp. 1153, 1157.)

While the minor here undoubtedly presented challenges for the Department and the juvenile court and required ongoing parental supervision to address her complicated needs, the similarities with the respective minors in *In re I.G.* and *In re Natasha H.* ends there. Here, the minor was making progress and, unlike *In re I.G.* and *In re Natasha H.*, she had a father who was willing and able to provide that supervision and who had the help of his wife and his extended family in meeting the minor's needs. Moreover, the termination of dependency and move to Texas would not result in the minor being forever cut off from services and support, as father had already begun putting mental health supports in place and stepmother had direct access to Texas DCFS for resources and support.

On this record, the juvenile court could reasonably conclude stability of placement was of paramount importance to this minor and that continued supervision was not necessary to ensure her safety or well-being in father's home. That is, the record supports the juvenile court's finding of changed circumstances and that the request to terminate dependency jurisdiction was in the minor's best interest. We conclude the juvenile court did not abuse its discretion when it granted the Department's section 388 petition to terminate dependency jurisdiction.

C.      *Visitation Exit Order*

Finally, mother contends the juvenile court abused its discretion when it improperly delegated visitation decisions to the minor, giving her sole discretion to

22

decide whether visits would occur.  The Department argues mother forfeited the claim for failure to raise it in the juvenile court.  We agree the claim is forfeited.

" 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.  [Citations.]  Forfeiture, also referred to as "waiver," applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.  [Citations.]'  (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222.)  A party may not assert theories on appeal which were not raised in the trial court.  (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1489.)"  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 686.)

The juvenile court stated twice that its order would include wording to the effect that the minor could refuse virtual, phone, or in-person visits.  Neither mother nor her counsel objected at either point.  Mother's failure to object forfeits her claim on appeal.  (*In re Dakota H., supra*, 132 Cal.App.4th at pp. 221-222.)

### III.  DISPOSITION

The juvenile court's orders are affirmed.


/S/
_____
RENNER, J.


We concur:

/S/
_____
EARL, P. J.


/S/
_____
KRAUSE, J.

23