Filed  9/2/25  In re D.R. CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.R.,<br><br>        Defendant and Appellant,<br><br>R.S.,<br><br>        Objector and Appellant, | A172373, 172380<br><br>(City & County of San Francisco Super. Ct. No. JD24-3074) |

**BY THE COURT**:

It is ordered that the opinion filed herein on August 29, 2025, be modified as follows:

The superior court case number, shown as JC24-3074 on the opinion through clerical error and inadvertence, is ordered modified to reflect the correct case number of JD24-3074, as shown on the caption above.

Dated:9/2/2025                    Tucher, P.J.
                                 TUCHER, P.J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.R.,<br><br>        Defendant and Appellant,<br><br>R.S.,<br><br>        Objector and Appellant, | A172373, 172380<br><br>(City & County of San Francisco Super. Ct. No. JC24-3074) |

D.R. II (Minor) was exposed to methamphetamine before he was born prematurely in April 2024, and he was removed from his parents' care.  His paternal grandmother, R.S. (Grandmother) sought to have Minor placed with her, but the San Francisco County Human Services Agency (the Agency) did not do so because of her criminal record.

Several months after the dispositional hearing, Grandmother filed a request that the court change its order placing Minor in foster care and

1

instead place him in her home. After considering the documents the parties submitted and Grandmother's statements to the court—but without hearing testimony—the juvenile court denied her request. By that time, reunification services had been terminated and a permanency planning hearing had been set. (Welf. & Inst. Code, § 366.26.)[1]

Both Minor's father, D.R. (Father), and Grandmother have appealed the order denying Grandmother's request to have Minor placed in her care, and we have consolidated their appeals. They contend that, by failing to hold a full evidentiary hearing, the juvenile court abused its discretion and denied Grandmother her right to due process of law; they also contend the Agency and the juvenile court failed to evaluate Grandmother appropriately for emergency placement. We affirm.

## BACKGROUND

### *Jurisdiction and Disposition*

Minor was born at 30 weeks' gestation and was hospitalized for several weeks after his birth. The Agency filed a dependency petition on May 1, 2024, alleging Minor's mother (Mother) had used methamphetamine throughout her pregnancy and that she and Father both had a history of substance abuse and mental health problems that placed Minor, then three weeks old, at risk of harm.[2] (§ 300, subd. (b).)

By the time the petition was filed, Mother had told the social worker she and Father would like Grandmother to be Minor's guardian, if one was necessary, and Grandmother had expressed interest in being assessed for

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party this appeal, and we need not describe in detail the allegations and facts pertaining to her.

2

possible placement. Grandmother had notified a social worker that she had a history with Child Protective Services, as well as a criminal record, and that she was currently receiving mental health services. Father explained he had been removed from Grandmother's care when he was a young child because she was a minor parent, and then was returned to her care at age 13. The Agency reported in its detention report that an assessment of Grandmother for resource family approval (RFA)[3] was pending.

At the detention hearing on May 2 and May 3, 2024, the juvenile court ordered Minor detained in foster care. He was placed with foster parents when he was released from the hospital in mid-May 2024, and he has remained in their home ever since.

On July 22, 2024, the juvenile court held a contested jurisdictional and dispositional hearing. The court declared Minor a dependent, ordered him placed in foster care, and ordered reunification services for Father and Mother.

### *Agency's Actions Regarding Relative Placement*

In May 2024, the Agency sent Grandmother, as well as other relatives, letters informing them that Minor had been removed, giving them contact information for the Agency, and telling them what they would need to do to be approved as a relative caregiver.

In the report for the July 2024 hearing, the Agency reported that Grandmother could not be considered for emergency placement because of her "history." However, she had been referred for resource family approval.

---

[3] The Resource Family Approval Program replaced previous processes for licensing foster family homes and approving relative and other placement providers. (§ 16519.5, subds. (a) & (c)(4)(A).)

By October 2024, the Agency reported that, "[w]ith regard to [Grandmother] being considered to be an RFA Caregiver, there are many concerns about her history": She had been clean and sober for one year, she had a lengthy child welfare and criminal history, and she had a history of homelessness, having obtained housing only within the last year. The following month, the Agency reiterated these concerns and explained to the juvenile court that Grandmother might not be able to pass the necessary background check for approval as a caregiver.

***Agency's Request for Termination of Reunification Services***

During the reunification period, Mother and Father neither visited Minor regularly nor engaged in other services offered to them. On October 15, 2024, the Agency filed a request that the court terminate reunification services. (§ 388.) A hearing on the request was set for December 23, 2024.

***Grandmother's Request for Placement***

In the meantime, on December 4, 2024, Grandmother filed a request under section 388 for the juvenile court to change its July 22, 2024 order placing Minor in foster care. She asserted that she had consistently sought to have Minor placed in her care, that she had participated in and completed RFA trainings, that her home had passed inspection as being physically suitable, and that she had been clean and sober for two years. She sought an order resuming visits with Minor—visits the court had terminated several months earlier when it terminated Minor's visits with his parents—and providing for a transition plan that would result in him being placed with her full-time. According to an attachment, Grandmother had completed all required foster parent classes, a separate eight-hour infant parenting class, and CPR classes.

Grandmother acknowledged she had a criminal history, including arrests for possession of drugs, possession of stolen property, and using her sister's driver's license. The drug possession charges had taken place as recently as 2022, but the other convictions were older. Grandmother asserted that she had been clean and sober since November 2022, that she had had stable housing for the last year and a half, and that she received regular therapy and psychiatric treatment to support her sobriety and mental health. She had been told that her RFA application was denied because her sobriety was too new, and she had been told she could appeal the denial but had not yet been sent the appeal form.

***Hearings on Section 388 Petitions***

The juvenile court stated at a hearing on December 4, 2024 that it found "enough basis to set [Grandmother's section 388 request] for hearing," and set the matter for a contested hearing on December 23.

Before that hearing could occur, however, there was another important development in the case. On December 23, 2024, in response to the Agency's request, the juvenile court terminated reunification services to both parents and set a hearing pursuant to section 366.26.[4] On the same date, the court continued the hearing on Grandmother's request to have Minor placed with her, directing the Agency to further investigate the length of Grandmother's sobriety and mental health treatment, the stability of her housing, and her criminal history, as well as the suitability of other relatives who had expressed interest in providing a home for Minor.

The continued hearing, which was before a different judge, was initially scheduled for January 21, 2025, then continued to January 29, 2025. Before

---

[4] Father filed a petition for an extraordinary writ, which we denied on the merits on March 4, 2025.

5

the hearing, the Agency provided a progress report addressing the issues the original judge had raised in December. The social worker assigned to the case had learned that Grandmother had been denied a criminal record exemption in 2023 when she applied to the California Department of Social Services for " 'Trust-Line Registration,' " that Grandmother had failed to appeal the denial by the deadline, and that she would not be able to reapply for a criminal exemption until June 2025, two years after the previous denial. The report continued, " 'Because of the denied criminal record exemption and pursuant to Written Directive 5-03B(m), the County is mandated to cease review of her RFA application.' " In her RFA application, Grandmother had stated she had never been denied any exemptions.

In Grandmother's favor, her therapist had told the social worker he had been meeting with Grandmother since April of 2023, that she had been sober for 26 months, and that he had not seen any behavior suggesting Grandmother would be harmful to Minor's safety.

At the January 21, 2025 hearing, Grandmother addressed the juvenile court directly, although she was not under oath. She said that she had been an addict, but she took part in a 31-day residential "detox" program beginning in November 2022; she had been working with a navigation center; she had permanent housing; she had graduated a program for social sector employment training; and she had worked as a street ambassador. She had regular sessions with her therapist and her psychologist.

The hearing was continued to January 29, 2025. Before the hearing, Father submitted additional information in support of Grandmother's request, including Grandmother's certificates of completion of a 40-hour infant training program and an employment training program, as well as a letter from her therapist attesting that Grandmother had maintained her

6

sobriety since at least December 2022, that she participated consistently in her treatment, and that her mental health symptoms neither posed a barrier to her ability as a caregiver nor caused concerns about her judgment.

At the January 29 hearing, the juvenile court indicated it would first decide whether Grandmother had shown an entitlement to an evidentiary hearing on her section 388 petition, that is, whether there were changed circumstances and whether the change in placement would be in Minor's best interest. Grandmother again addressed the court, explaining that she had continued her sobriety for more than two years and had proper housing, a good support system, and regular contact with her other grandchildren. She expressed her love for Minor, her desire to care for him, and the importance of family bonds.

The juvenile court declined to conduct a full evidentiary hearing, but stated it had reviewed the Agency's progress report and the written evidence that had been provided, and had considered Grandmother's statement which it took as true, telling Grandmother that although her statements were not under oath, "I believe you."

The court went on to explain that it did not find new evidence or changed circumstances for purposes of section 388. In any case, even if there had been such a showing, the court concluded it was not in Minor's best interest to be removed from his current foster home and placed with Grandmother. Taking into account the factors set forth in section 361.3, which governs preferential consideration of a relative's request for placement of a child, the court noted that Minor was very young and needed constant care and stability; that Grandmother's RFA application was not approved; that she had some criminal history; that she had a history, although "very dated," with child protective services; that she did not have a day-to-day

7

relationship with Minor; that there were no reported safety concerns in her home; and that she would be able to provide contact with Minor's relatives. On balance, the court found, it was not in Minor's best interest to move him from his foster home, the only home he had ever known, to Grandmother's care. The juvenile court therefore denied Grandmother's request.

## DISCUSSION

### I.    Failure to Hold Evidentiary Hearing

Appellants contend that Grandmother was denied due process by the juvenile court's failure to hold an evidentiary hearing on her request for placement under section 388, and that this failure was an abuse of discretion. To the extent the facts are undisputed, we review a due process claim de novo. (See *In re J.R.* (2022) 82 Cal.App.5th 569, 587–588.) The court's ruling on a section 388 petition "is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) Abuse of discretion is shown if the juvenile court makes an arbitrary, capricious, or patently absurd decision (*ibid.*) or applies incorrect legal standards (*In re Shannon M.* (2013) 221 Cal.App.4th 282, 289).

Section 388 authorizes any person with an interest in a dependent child to petition the court to change a prior order on the grounds of new evidence or change of circumstance. (§ 388, subd. (a)(1).) If it appears that the child's best interests may be promoted by the proposed change, "the court shall order that a hearing be held." (§ 388, subd. (d).) The conduct of a hearing on such a request is governed by rule 5.570(h) of the California Rules of Court. As pertinent here, unless "[t]here is a due process right to confront and cross-examine witnesses," "proof [at the hearing] may be by declaration and other documentary evidence, or by testimony, or both, at the discretion of the

8

court." (*Id.*, rule 5.570(h)(2)(B).)  The first question we face is whether Grandmother had such a due process right.

As a general rule, noncustodial grandparents do not have a substantive due process right to maintain a relationship with their grandchildren or to their care and custody.  (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1508, citing *Troxel v. Granville* (2000) 530 U.S. 57, 60, 64–66, 69–73; *In re R.J.* (2008) 164 Cal.App.4th 219, 225; accord, *In re R.M.* (2025) 111 Cal.App.5th 119, 131.)  The court in *In re C.P.* (2020) 47 Cal.App.5th 17, found an exception to this general rule when "essentially *parental* bonds . . . develop between a child and a caregiver, including a grandparent."  (*Id.* at p. 28, citing *In re H.K.* (2013) 217 Cal.App.4th 1422, 1435 [child has no fundamental right to be placed with relative in absence of bonded, "quasi-parental" relationship].)

There is no indication that Grandmother has such a relationship with Minor.  We recognize the evidence that she was present at Minor's birth, that she has visited him whenever allowed to do so, that she has achieved sobriety and obtained permanent housing, and that she loves Minor.  Nevertheless, she has seen him only a few times since his birth, during which time he has been in the care of the foster parents who have been meeting all of his needs. Appellants make no showing—and indeed, offer no argument—that Grandmother occupies a parental role in Minor's life.

Appellants argue that this due process right is not limited to relationships that are parental in nature and that Grandmother's efforts to have Minor placed in her care over the course of the dependency themselves create a substantive due process right.  But they draw our attention to no authority supporting their view that a substantive due process right exists in the absence of either a parent-child relationship or a relationship that

9

establishes similar bonds.  In the circumstances, we conclude Grandmother does not have a due process right to confront and cross-examine witnesses at the hearing on her petition.  As a result, the juvenile court could properly conduct the hearing, in its discretion, with documentary evidence rather than testimony.  (Cal. Rules of Court, rule 5.570(h)(2)(B).)

Appellants argue nonetheless that the juvenile court abused its discretion in declining to hold a full evidentiary hearing with the opportunity to cross-examine witnesses.  This argument is based on events that occurred when the original judge on the case, Judge Vedica Puri, was replaced with the judge who ultimately ruled on Grandmother's request, Judge Adrienne Rogers.  On December 4, 2024, Judge Puri explained that she found "enough basis to set [Grandmother's request] for hearing."  The preprinted form order signed by Judge Puri indicates that the hearing was ordered because "the best interest of the child may be promoted by the request."  When the hearing began on December 23, Judge Puri continued it, directing the Agency to obtain more information on Grandmother's background, among other things, before the court ruled on the request.

By the time the continued hearing took place, Judge Rogers had been assigned to the case because, appellants inform us, Judge Puri had retired.  Judge Rogers indicated she had read the transcript of the December 23 hearing, as well as Judge Puri's notes and the case file.  She described the first issue before her as whether to grant an evidentiary hearing on Grandmother's petition.  As to this issue, at the January 29, 2025 hearing, Judge Rogers explained that she had listened to Grandmother's lengthy statements at the hearing the previous week and had received and considered the written materials the parties had provided.  In light of this "extensive information" and "the considerable discretion I have to fashion the

10

conduct of the hearing," Judge Rogers concluded a further evidentiary hearing was not required.

Appellants contend that Judge Puri's December 4, 2024 order set an evidentiary hearing, and that Judge Rogers abused her discretion by declining to hold one. In refusing to do so, they argue, Judge Rogers effectively acted as a " 'one-judge appellate court,' " violating the general principle that one judge may not vacate an order entered by another judge. (See *In re Alberto* (2002) 102 Cal.App.4th 421, 427–428.)

We first note that this principle is subject to exceptions in limited circumstances, among them when the first judge is unavailable. (*People v. Garcia* (2016) 5 Cal.App.5th 640, 653.) Appellants tell us that Judge Rogers was assigned the case after Judge Puri's retirement, suggesting Judge Puri was no longer available.

Moreover, we are not persuaded that Judge Rogers's actions amounted to a reversal of Judge Puri's order. Although Judge Rogers did not allow testimony and cross-examination, she did hold a hearing at which she considered Grandmother's statements, reviewed the case file and the written evidence in connection with the motion, and heard extensive argument from counsel and Grandmother. When considering a hearing conducted in a similar manner, the court in another case concluded that a proceeding that included receipt of written evidence and argument from counsel—although no testimony—constituted a "hearing" under section 388 rather than a summary denial of a petition. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1080–1081; compare *In re Lesly G.* (2008) 162 Cal.App.4th 904, 915 ["no hearing" where court did not take testimony, receive documentary evidence, *or* allow argument].) Here the proceedings were consistent with the minimum requirements for a hearing on a section 388 petition where there is no due

11

process right to cross-examine witnesses; the court, in its discretion, may rule based on documentary evidence rather than testimony. (Cal. Rules of Court, rule 5.570(h)(2)(B).)

In any event, even if Judge Rogers had improperly reversed Judge Puri's order, there is no showing of prejudice. The proper test of prejudice in this circumstance is the familiar *Watson* standard, under which we reverse only if it is reasonably probable the appealing party would have achieved a more favorable result absent the error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Goodwillie* (2007) 147 Cal.App.4th 695, 716 [applying *Watson* standard when judge reversed order entered by another].) The record shows that before denying Grandmother's petition, the juvenile court listened to Grandmother recounting her relationship with Minor, the reasons she wished to have him in her care, and the impressive progress she had recently made in her recovery from substance abuse, in securing housing and employment, and in taking child welfare courses, and the court accepted these facts as true. The court also reviewed the evidence Grandmother submitted and heard extensive argument from counsel and Grandmother. Appellants do not identify any further evidence Grandmother would have presented that might have changed the juvenile court's view. (See *In re C.J.W.*, *supra*, 157 Cal.App.4th at p. 1081 [rejecting claim of due process violation from failure to allow testimony and cross-examination because no showing of what further evidence parents wanted to present].) Appellants have not shown reversible error on this ground.

## II.    Failure to Evaluate Grandmother for Placement

Appellants also contend the Agency and the juvenile court failed to evaluate Grandmother appropriately for emergency placement at the outset of these proceedings, and that the Agency concluded erroneously it was

required to cease review of Grandmother's RFA application due to her criminal history.  To the extent these arguments raise questions of law, our review is de novo.  (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800.)  We review the juvenile court's determination of a section 388 motion, and of a child's best interests, for abuse of discretion.  (*In re Shirley K.*, *supra*, 140 Cal.App.4th at p. 71; *In re M.H.* (2018) 21 Cal.App.5th 1296, 1305.)

## *Relative Placement Preference*

The Legislature has directed that, when a child is removed from the parents' custody, "preferential consideration" must be given to a relative's request to have the child placed with him or her.  (§ 361.3, subd. (a); see § 16000, subd. (a); *In re N.J.* (2024) 104 Cal.App.5th 96, 122 (*N.J.*).)  Consistent with this directive, when a child is taken into temporary custody, the social worker must assess the suitability of any relative who requests emergency placement.  (§ 309, subd. (d)(1).)  In this context, a relative who seeks placement must be given " '[p]referential consideration,' " meaning the relative requesting placement is "the first placement to be considered and investigated."  (§ 361.3, subd. (c)(1).)  This is not " 'an evidentiary presumption that placement with a relative is in the child's best interests' but it does require the social services agency and juvenile court to determine whether such a placement is appropriate,"  and it "places the relative 'at the head of the line when the court is determining which placement is in the child's best interests.' "  (*In re R.T.* (2015) 232 Cal.App.4th 1284, 1295–1296; accord, *N.J.*, at p. 123.)

## *Resource Family Approval Process*

The Legislature has directed the State Department of Social Services (DSS) to "implement a unified, family friendly, and child-centered resource family approval process" to license foster family homes.  (§ 16519.5, subd. (a);

13

see *In re Charlotte C.* (2019) 33 Cal.App.5th 404, 416.) In response to the Legislature's mandate, DSS has issued "Resource Family Approval Written Directives," the most recent of which, Version 8, was effective in November 2022 (the Directive).[5] (§ 16519.5, subd. (f)(1); *Charlotte C.*, at p. 417.)

Section 5-03B of the Directive establishes procedures counties must use when reviewing an RFA application. Under those rules, as a general matter a person with one or more criminal convictions is presumptively disqualified from serving as a resource family, but an applicant may seek an exemption. (See Directive, §§ 3-01(29), 6-03B.) And, central to appellants' contentions, the Directive requires a county to "cease any further review of an application" if "[a]n individual has had a[n] exemption denial . . . within the preceding two years." (Directive, § 5-03B(m)(1)(B).) However, notwithstanding this provision, the county may continue its review "if it has determined that the applicant is not an excluded individual *and the reasons for the previous denial*, rescission, or revocation were *due to circumstances or conditions which the applicant shows have either been corrected or are no longer in[]existence*."[6] (Directive, § 5-03B(m)(2), italics added; see Welf. & Inst. Code, § 16519.5, subd. (c)(7)(A) & (B).)

---

[5] The Directive is found at <https://www.cdss.ca.gov/Portals/9/RFA/Written%20Directives%20V8.pdf?ver =2022-11-02-102947-957> (as of Aug. 29, 2025). (Cal. Dept. of Social Services, Resource Family Approval Written Directives Version 8 (2022).) As all parties have cited and relied on the it, we take judicial notice of the Directive. (Evid. Code, §§ 452, subd. (c), 459.)

[6] There is no indication that Grandmother is an excluded individual. An " '[e]xcluded individual' " is one "who is prohibited from residence, presence, or contact with children or nonminor dependents in the home of a Resource Family as a result of an order by the Department or an administrative action." (Directive, § 3-01(39).)

*Analysis*

At the May 2024 detention hearing, the juvenile court ordered that Minor be placed in foster care. In its July 2024 disposition report, the Agency indicated that Grandmother could not be considered for emergency placement due to her history, but that she had been referred for RFA assessment. At the jurisdictional and dispositional hearing on July 22, 2024, the juvenile court declared Minor a dependent and continued his placement in foster care.

In the progress report prepared before the January 21, 2025 hearing on Grandmother's section 388 petition, the Agency provided more detail. It informed the court DSS had reviewed Grandmother's application for " 'Trust-Line Registration' " on June 13, 2023 and denied a " ' "criminal record exemption," ' " and that Grandmother failed to appeal the denial. The Agency took the position that it was therefore required, under section 5-03B(m) of the Directive, to cease review of her RFA application.

Appellants argue that the Agency had discretion to place Minor in Grandmother's care on an emergency basis regardless of the status of her criminal record exemption or RFA approval, and that it acted improperly in failing to do so at the outset of the dependency. For this contention, they rely on section 361.4, which provides in pertinent part that, before making an emergency placement pending the detention hearing or dispositional hearing (§ 309, subd. (d)) or if a foster caregiver becomes suddenly unavailable (§ 361.45), the county welfare department must carry out certain investigative tasks, including a criminal records check (§ 361.4, subd. (a)), and that certain offenses are disqualifying unless an exemption has been granted (§ 361.4, subd. (b)(2) & (5); see Health & Saf. Code, § 1522, subd. (g)(2)(B) & (D)). However, notwithstanding these provisions or the recommendation of the county placing agency, "the court may authorize the

15

placement of a child on an emergency basis in the home of a relative, regardless of the status of any criminal record exemption or resource family approval, if the court finds that the placement does not pose a risk to the health and safety of the child." (§ 361.4, subd. (b)(6).)

Appellants argue the Agency and the juvenile court failed to evaluate Grandmother's home properly under section 361.4, subdivision (b)(6) before finding she did not qualify for emergency placement and placing Minor outside the home at the detention hearing. The first problem with this contention is that section 361.4 applies, on its face, to *emergency* placement before disposition, or when a foster parent becomes suddenly unavailable. (§§ 309, subd. (d)(1); 361.4, subd. (a); 361.45, subds. (a) & (b).) At the dispositional hearing on July 22, 2024, the juvenile court placed Minor with his current foster family, and there was no appeal from that order. By the time Grandmother brought the request that is the subject of the order now on appeal, emergency placement was not at issue.

However, even if the standards of section 361.4 applied at the time the juvenile court made the ruling before us on appeal, we would find no reversible abuse of discretion. Subdivision (b)(6) of that statute *allows*, but does not *require*, the court to authorize emergency placement with a relative regardless of the status of a criminal record exemption or RFA approval, if it finds placement does not place the child's health and safety at risk. The juvenile court stated expressly at the January 21, 2025 hearing that it was "aware of [its] discretion under section 361.4," and that even using that discretion, it did not consider a change in placement to be warranted. The court had already explained carefully its reasons for concluding a change in placement was not appropriate: it accepted and took as truthful Grandmother's statements that she loved Minor and visited him whenever

16

possible, that she had well prepared her home for his arrival, and that she had been sober for two years. Nevertheless, the court explained, Minor was very young and needed constant care and stability; Grandmother had a criminal history and a previous criminal exemption had been denied—a fact Grandmother did not disclose in response to a question on her RFA application; and she did not have a close relationship with Minor. These factors are supported by the record and in light of them, we cannot conclude the court exceeded its discretion in declining to place Minor with Grandmother under section 361.4 in making the order on appeal.

In reaching this conclusion, we recognize that Grandmother had sought Minor's placement with her since shortly after his birth. We are also aware of the recent case of *N.J.*, *supra*, 104 Cal.App.5th 96. In that case, the aunt of a child who was detained immediately after birth had consistently sought to have her home assessed for placement, but the agency placed the child with a foster caregiver—an attorney for the Dependency Division of the County Counsel's office. Throughout the dependency, the agency inexplicably dragged its feet in assessing the aunt's home, although her home ultimately received approval. (*Id*. at pp. 103–104, 107.) The appellate court concluded the agency's "egregious" delays in fairly evaluating the aunt for placement and lack of response to the family's pleas for supportive services compelled reversal of the order terminating parental rights and designating the foster caregiver as the prospective adoptive parent. (*Id*. at p. 104, 131.) The court explained that the agency "cannot shut a family almost completely out of the process for over a year and then point to the passage of time and failure to form a bond as the reasons for denial of placement," and that the juvenile court's failure to apply the relative placement preference under section 361.3 was prejudicial error. (*Ibid*.)

17

The court in *N.J.* relied in part on *In re Isabella G.* (2016) 246 Cal.App.4th 708. (*N.J.*, *supra*, 104 Cal.App.5th at pp. 125–127.) There, a child's grandparents sought custody as soon as the child was detained, but the agency did not assess their home despite promising to do so, told them there was a mandatory one-year period before the child could be moved, and ignored the grandparents' request a year later to have the child placed with them—at which point reunification services were terminated. (*Isabella G.*, at pp. 711–712, 722.) The appellate court concluded that, because the grandparents requested placement in a timely manner and the agency failed to assess their home in disregard for the "clear" legislative preference for relative placement, the statutory standards governing a request for placement with a relative applied even after reunification services had been terminated. (*Isabella G.*, at pp. 722–723 [discussing § 361.3].)

Similarly egregious facts are not present here. There is no indication the Agency abdicated its role in considering Grandmother's request for placement of Minor in her care. Rather, it initially referred the matter for RFA assessment, and it explained throughout the process that Grandmother's criminal history, including the denial of an exemption, was a bar to such placement.

Appellants also argue that, notwithstanding the general rule that a county must cease review of an RFA application if an applicant has had an exemption denial in the previous two years, the Agency abused its discretion in failing to apply the exception that it "may continue to review an application if [the County] has determined that . . . the reasons for the previous denial . . . were due to circumstances or conditions which the applicant shows have been either corrected or are no longer in[]existence." (Directive, § 5-03B(m)(2) & (1)(B).) Because Grandmother had achieved

18

sobriety, they contend, the reasons for the exemption denial no longer existed. But the record shows that the Agency generally requires between three and five years of sobriety for RFA approval, a measure Grandmother had not yet achieved at the time of her motion. And Grandmother does not explain how the evidence might show the Agency to its satisfaction that her criminal record, which apparently included arrests for possession of stolen property and using another person's driver's license, was based on circumstances that had been corrected or no longer existed. Under the circumstances, Grandmother has established neither abuse of discretion nor prejudice flowing from the Agency's failure to continue evaluating her RFA application.

## DISPOSITION

The order is affirmed.

TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
GOLDMAN, J.*


*In re D.R.* (A172373 A172380)

---

\* Associate Justice of the Court of Appeal, First Appellate District, Division Four, sitting by assignment pursuant to article VI, section 6 of the California Constitution.